HAMBRO AUTOMOTIVE
CORPORATION,
Appellant,

v.

UNITED STATES, Appellee.

Appeal No. 79–3.

United States Court of Customs
and Patent Appeals.

Aug. 23, 1979.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, attorneys of record, for appellant, Alan S. Hays, Steven B. Rosenfeld, Mark C. Morril, New York City, of counsel.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Acting Director, Velta A. Melnbrencis, New York City, for the U. S.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Associate Judges, and NEWMAN,* Judge.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, 81 Cust.Ct. 29, C.D. 4761, 458 F.Supp. 1220 (1978), dismissing the importer's action challenging the denial of protests filed after refusals of its requests for reliquidation of the involved entries under Section 520(c)(1) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1520(c)(1) (1964)[1] (hereinafter § 520(c)(1)). We affirm.

---

* The Honorable Bernard Newman, United States Customs Court, sitting by designation.

1. § 520(c)(1) reads as follows:
   (c) Notwithstanding a valid protest was not filed, the Secretary of the Treasury may authorize a collector to reliquidate an entry to correct—
   (1) a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, appraisement, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the customs service within one year after the date of entry, appraisement, or transaction, or within sixty days after liquidation or exaction when the liquidation or exaction is made more than ten months after the date of the entry, appraisement, or transaction; * * *.

2. British Leyland Ltd., successor-in-interest to both appellant Hambro Automotive Corp. and BMC, is the real party in interest.

3. § 402a(f) reads as follows (emphasis ours):
   SEC. 402a. *Value (Alternative)*.
   *    *    *    *    *    *
   (f) Cost of Production.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

The subject merchandise consists of automobiles and optional extras manufactured by British Motor Corporation Limited (BMC)[2] and exported from the United Kingdom during 1959–1961. Appellant Hambro Automotive Corporation (Hambro) entered the merchandise under eighty-four separate entries at the ports of Chicago, Houston, and San Francisco. The Bureau of Customs (now the Customs Service) appraised the merchandise during 1959–1962 on the basis of cost of production as defined in Section 402a(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, Pub.L.No.927, 70 Stat. 943, current version of 19 U.S.C. § 1402(f) (1976)[3] (hereinafter § 402a(f)).

Concerning fifty-two of the entries alleged by appellant to be the subject of errors in appraised value, customs officials at the aforementioned ports initially refused to reliquidate via letters to appellant in 1964, 1965, and 1968.[4] To vindicate its claims after these refusals, Hambro ap-

---

(1) The *cost of materials of, and of fabrication*, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;
(2) The usual *general expenses* (not less than 10 per centum of such cost) in the case of such or similar merchandise;
(3) The *cost of all containers* and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and
(4) An *addition for profit* (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

4. By letters dated November 2, 1964, the Collector of Customs at the port of San Francisco refused to reliquidate Entry Nos. 18787 and 18788. By letters dated March 15, 1965, he

proached the Bureau of Customs in Washington, D. C. When the Bureau refused to recognize the claims, in May 1970 appellant requested refusals to reliquidate its entries under § 520(c)(1) from the respective District Directors of Customs at the involved ports. Subsequently, appellant filed protests during June to September 1970 to these refusals and commenced this action in September 1970.

Though not the subject of previous refusals to reliquidate, the remaining thirty-two entries in question were also alleged to be encompassed by § 520(c)(1) because of asserted mistakes of fact and/or inadvertences identical to those ascribed to the above fifty-two entries.

The error common to all the entries in this action involved the determination by BMC of the statutory cost of production under § 402a(f) of its automobiles and optional extras. To put the error in proper perspective, pursuant to a 1960 Customs ruling and a corresponding appraiser's letter enclosing a sample format, BMC accountants began the task of attributing its costs and expenses to the statutory categories defined in § 402a(f). In attempting to do so, personnel at BMC used general expenses and profits in the *home* market rather than general expenses and profits in the *export* market in determining the statutory value upon which duties were assessed.

Pursuant to Cust.Ct.Rule 4.7(b)(2),[5] the Government moved to Customs Court to dismiss the action, arguing that because appellant's claims were not within the purview of § 520(c)(1) and were not initiated as prescribed by § 514 of the Tariff Act of 1930, 19 U.S.C. § 1514, appellant had failed to invoke the jurisdiction of the Customs Court under 28 U.S.C. § 1582.[6] The Government insisted that BMC's error fell within the exclusionary language of § 520(c)(1), i. e., "not amounting to an error in the construction of a law." Appellant opposed the motion for reasons set forth in its pleadings and exhibits. The Government replied that the limited facts pertaining only to the issue of jurisdiction were not in dispute.

The Customs Court held that the refusals of 1964, 1965, and 1968 to reliquidate the fifty-two entries became final and unassailable pursuant to 19 U.S.C. § 1514. Concerning the other thirty-two entries, the court said:

> However it is expressed the mistakes which were made must be considered as being, in essence, misunderstandings of

refused to reliquidate Entry Nos. 19979, 19980, 21999, 24642, 25041, 28307, 30711, 33730, 16137, 16138, 17566, 17651, 18785, 18786, 19223, and 31972.

By letter dated November 10, 1964, the Deputy Collector at the port of Chicago refused to reliquidate Entry Nos. C–4556, C–6152, C–6179, C–6881, and C–6892.

By letter dated May 9, 1968, the District Director of the port of Houston refused to reliquidate, inter alia, Entry Nos. 130–H, 698–H, 1756–H, 1761–H, 1806–H, 1807–H, 2026–H, 2384–H, 2385–H, 2765–H, 2808–H, 2809–H, 2882–H, 3090–H, 3266–H, 3449–H, 3637–H, 3667–H, 3673–H, 4177–H, 4178–H, 4609–H, 5107–H, 5542–H, 5648–H, 5702–H, 5954–H, 6569–H, and 2801–H.

5. Rule 4.7(b)(2) reads:
(b) *Defenses: How Presented*: The following defenses may be made by a motion to dismiss: * * * (2) lack of jurisdiction of the subject matter; * * *.

6. 28 U.S.C. § 1582 (1964) and 19 U.S.C. § 1514 (1964) read as follows (emphasis ours):

§ 1582. Jurisdiction of the Customs Court
* * * * * *
(c) The Customs Court shall not have jurisdiction of an action unless * * * a protest has been filed, *as prescribed by section 514* of the Tariff Act of 1930, as amended, and denied in accordance with the provisions of section 515 of the Tariff Act of 1930 * *.

§ 1514. Protest against collector's decision * * * all decisions of the collector, including . . . his *refusal to reliquidate any entry for a clerical error* * * * shall, upon the expiration of sixty days after the date of such liquidation * * * or refusal, be *final and conclusive* upon all persons * * unless the importer * * * shall within sixty days after * * * such liquidation * * * or refusal * * * file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry or * * * refusal, the reasons for the objection thereto. * * *

the law * * *. The mistakes were interpretational and decisional. * * *.

* * * * * *

* * * the mistakes sought to be corrected * * * are not in dispute. They require a finding that the protests underlying this action were brought to protest decisions regarding matters which could not be protested * * * because of * * * the inappropriateness of section 520(c)(1) to the accomplishment of the change in value sought by plaintiff * * *. Not being valid protests, their denial is not a matter within the jurisdiction of the court.

We take the last statement to mean that the court was without jurisdiction to consider the protests and, therefore, could neither sustain nor deny them.

Hambro now contends before this court that the refusals to reliquidate the fifty-two entries were not final. It argues that administrative communications with customs officials in Washington, D.C., constituted a continuing protest that did not result in final rejections until denials of appellant's requests for reliquidation by district directors in Chicago, Houston, and San Francisco in 1970.

Regarding the remaining thirty-two entries, appellant contends that "the error was simply the failure to perform a purely ministerial act," i. e., to *subtract* costs of export divisions of BMC (Austin Motor Export Ltd. and Nuffield Export Ltd.) rather than *add* them to home market costs figures. Additionally, appellant complains that the Customs Court abused its discretion by denying appellant the opportunity to present testimony from the involved BMC employees as to the nature of the errors.

## OPINION

■ The Government having challenged the subject matter jurisdiction of the Customs Court, the burden of proof fell on appellant Hambro, the party asserting jurisdiction, to show that jurisdiction existed. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 188–89, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936); *Gibbs v. Buck*, 307 U.S. 66, 72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939).

■ Concerning the fifty-two entries, we agree with the Customs Court that refusals by customs officials in 1964, 1965, and 1968 to reliquidate became final and conclusive under 19 U.S.C. § 1514 for failure to file protests with the respective collectors within sixty days after the refusals. By its own admission, appellant chose to vindicate its claims subsequent to these refusals with customs officials in Washington, D.C., rather than preserve its judicial remedies. Only after March 1970 when appellant received adverse results from its administrative approach did it initiate procedures required to invoke the jurisdiction of the Customs Court. Not having filed timely protests as prescribed by § 1514, appellant relinquished its access to the court.

■ Concerning the remaining thirty-two entries, we again agree with the Customs Court. Unless the provision of § 520(c)(1) limiting the finality of § 1514 was available to Hambro, appellant's access to the jurisdiction of the Customs Court was precluded by its failure to avail itself of the statutory relief from the finality of the collectors' decisions under § 1514. The protests having been filed seven to eight years after the liquidations and/or reliquidations, the latter became final and conclusive upon appellant.[7]

Appellant has correctly stated the distinction between mistakes of law and mistakes of fact that § 520(c)(1) requires us to observe (emphasis ours):

A mistake of fact is any mistake except a mistake of law. * * * It has been defined as a mistake which takes place

---

7. The latest date of liquidation or reliquidation for any of the Houston entries was August 16, 1962 (Entry No. 2801–H); for any of the San Francisco entries, February 18, 1963 (Entry No. 16138); for any of the Chicago entries, July 25, 1963 (Entry Nos. 5078, 8270, and 9316). The corresponding protests were filed August 6, June 1, and September 21, 1970.

when some fact which indeed exists is unknown, or a fact which is thought to exist, in reality does not exist. * * * Pomeroy, Equity Jurisprudence § 839 (1941). A "mistake of fact exists where a person understands the facts to be other than they are, whereas *a mistake of law exists where a person knows the facts as they really are but has a mistaken belief as to the legal consequences of those facts*." 58 C.J.S. Mistake p. 832.

Inadvertence, on the other hand, is a word of broad meaning. * * * It has been defined variously as an oversight or involuntary accident, or the result of inattention or carelessness, and even as a type of mistake. 42 C.J.S. Inadvertence p. 495. It is thus language broader in scope than mistake. [*C. J. Tower & Sons of Buffalo, Inc. v. United States*, 68 Cust.Ct. 17, 22, C.D. 4327, 336 F.Supp. 1395, 1399 (1972), *aff'd*, 499 F.2d 1277, 61 CCPA 90, C.A.D. 1129 (1974) (citations omitted).]

Other than appellant's argument, we find nothing to substantiate that BMC's errors in compiling statutory cost of production value were anything other than a mistake of law, expressly excluded by § 520(c)(1). We agree with the Customs Court that facts disputed by the parties are irrelevant to the jurisdictional issue.

Appellant's own admissions and the pertinent facts it adduced substantiate our position. In answer to the Government's Interrogatory 11a requiring a statement of the *exact nature of the errors committed*, appellant responded (emphasis ours):

These mistakes and inadvertences came about because, among other things, the accounting terms and expressions contained in the above mentioned Customs letter [briefly summarizing Section 402a(f) and suggesting a possible format for presenting cost figures] and conversations *meant*, not what Customs intended, but *different things to the British accountants* and other representatives.

\* \* \* \* \* \*

The exact nature of the errors committed lay in the fact that *BMC applied the American accounting terms and expressions as they understood them*, believing them to be used the same way and with the same meaning as ordinarily used by BMC in its accounting terminology in the United Kingdom.

Similarly, at oral argument on the Government's motion to dismiss, the following colloquy occurred (emphasis added):

JUDGE WATSON: * * * can you specify what you believe to be the *exact genesis of the errors committed* by B.M.C.?

MR. HAYS [Counsel for Hambro]: The genesis of the errors was in the *misunderstanding by the B.M.C. accountants* of the instructions which were sent out by New York in November of 1960, following the Bureau's ruling of September 1960.

The record of events prepared in 1973 by one Williams, Group Cost Accountant for BMC, upon which appellant heavily relied in its opposition to the motion to dismiss, is in agreement. That record states that:

Due to a misunderstanding he [one Jack Day, BMC's Pricing Division Supervisor] was including the same type of expense twice, the sales cost given to him by the Accountants for the Home Market and in addition he was adding his own costs which he found in the Export Corporation.

This view is corroborated by further evidence submitted by appellant in which another BMC official related to Williams his correspondence with Day concerning the mistakes (emphasis ours):

I had some correspondence with Mr. Day about this in April and May, using the Morris Mini-Minor as an example. On these figures the Admin. and Commercial Expenses in the Home Market were shown as £41:1:11 and Mr. Day showed me that £1:1:0 £1:1:0 [sic] *should* be added to this figure * * *.

These consistent admissions and related facts concerning the exact nature of the errors show conclusively that the errors were not in essence the result of mere com-

putational mishaps. With full knowledge of the facts that BMC's own books in front of them, BMC accountants produced cost of production values under § 402a(f) for its goods exported to the United States.

■ As stated in the language previously quoted from *C. J. Tower & Sons, supra,* mistakes of fact occur in instances where either (1) the facts exist, but are unknown, or (2) the facts do not exist as they are believed to. Mistakes of law, on the other hand, occur where the *facts are known*, but their *legal consequences* are not known or are *believed to be different than they really are.* Appellant has not shown that BMC was ignorant of its general expenses and profits in either the home market or the export market, nor has it shown that BMC believed these facts to be other than they were.

In arguing that BMC's mistake was merely ministerial, appellant seizes upon an errant step in calculating statutory value without recognizing the origin of the errant step. Of course, in presenting statutory cost of production figures, certain facts—in the instant case, general expenses and profits—will be included or excluded, i. e., added, subtracted, or ignored, to produce the final statutory value submitted to the customs appraiser. However, this is hardly a valid basis for contending that an error in including or excluding those facts was one of adding or subtracting, as appellant does here. We must look to the party's knowledge of the facts and how it intended to use them. Here, BMC was fully aware of its general expenses and profits, but believed their legal consequences—their effect on the calculation of value under § 402a(f)—to be other than they were.

■ Finally, we conclude that the Customs Court did not abuse its discretion by refusing to receive testimony from individuals involved in making the mistakes at BMC. At oral argument on the Government's motion, Judge Watson specifically asked counsel for Hambro about the content of the proposed testimony (emphasis ours):

MR. HAYS: The genesis of the errors was in the *misunderstanding* by the B.M.C. accountants of the [Bureau's] instructions [the Customs letter summarizing § 402a(f) and suggesting a possible format] * * *.

JUDGE WATSON: And that would be the thrust of the testimony you expect to offer on that point?

MR. HAYS: Yes. * * *.

Hence, counsel for Hambro admitted, consistent with appellant's answer to the Government's interrogatories, that the origin of the mistake by BMC was the misunderstanding by BMC of the instructions regarding its general expenses and profits, and offered testimony only to that effect. We see no abuse of discretion in refusing such testimony when appellant has shown no jurisdictional facts to support its contention that BMC's errors did not amount to mistakes in the construction of a law.

In summary, appellant failed to initiate procedures under 19 U.S.C. § 1514 that would have relieved the decisions of customs officials of their finality and conclusiveness, and failed to present claims that were encompassed by other than the exclusionary language of § 520(c)(1). Hence, as to all eighty-four entries in this case, the jurisdiction of the Customs Court was not properly invoked under 28 U.S.C. § 1582. The Customs Court therefore properly dismissed appellant's action for want of jurisdiction.

The judgment of the Customs Court is *affirmed.*

BALDWIN, Judge, dissenting in part.

I agree with the majority that with regard to the fifty-two entries, the refusals by customs officials in 1964, 1965 and 1968 to reliquidate became final and conclusive under 19 U.S.C. § 1514 for failure to file protests with the respective collectors within sixty days after the refusals.

The majority and the court below take the position that the asserted errors by British Motor Corporation Limited (BMC) in the determination of the cost of production of its automobiles are not a proper

matter for correction under § 520(c)(1). I respectfully dissent.

The majority has determined the errors to be mistakes of law rather than mistakes of fact and therefore excludable from § 520(c)(1). I believe this conclusion to be irrelevant to the question before us. I do not feel that sufficient heed has been paid to the specific wording of § 520(c)(1) which broadly encompasses "a clerical error, mistake of fact, or other inadvertence not amounting to an error in the *construction* of the law." [Emphasis added.] I cannot agree that the statutory provision "error in the construction of the law" can be broadly construed and considered to be synonymous with "mistake of law," which the majority has done.

It is a proper judicial function to determine the construction of a law in a case before that body. In giving effect to the intention or purpose of the legislature, presumptions as to the words, phrases, and provisions used in statutes include presumptions that the legislature understood their meaning and intended their use, and used them in their ordinary and common meaning, and that every word, sentence, or provision has a purpose and is to be given some effect.[1] In such capacity we must determine the meaning of the statutory phrase "error in the construction of a law."

A construction of the law can be properly considered to mean the application of the law to the facts stated,[2] and involves

[t]he process, or the art, of determining the sense, real meaning, or proper explanation of obscure or ambiguous terms or provisions in a statute, written instrument, or oral agreement, or the application of such subject to the case in question, by reasoning in the light derived from extraneous connected circumstances or laws or writings bearing upon the same or a connected matter, or by seeking and applying the probable aim and purpose of the provision. *Koy v. Schneider*, 110 Tex. 369, 221 S.Q[W]. 880, 884. [*Black's Law Dictionary*, Revised 4th Ed., p. 386.]

I would distinguish *construction* of a law from *compliance* with a law. Compliance with a law requires that a person act in accordance with the law as construed by legal authority. Construction of the law is the process of determining the legal meaning of terms in a statute. I am reluctant to charge to a person who must comply with the law the legal authority to construe the law with which he must comply.

Appellant has argued that Mr. Day, the BMC Pricing Division Supervisor, was not in a position to make an independent judgment as to the law and cites *Excel Shipping Corp. v. United States*, 44 Cust.Ct. 55, C.D. 2153 (1960), for support. In holding the action of a customs entry clerk to be clerical error or an inadvertence, the Customs Court said:

No one could expect the entry clerk to make an independent judgment as to the law. No one here expected him to do so. That was not his function. Any error of law was not his error. On the record before us, it was his duty to reject an entry that did not show the duty rate as the Bureau interpreted it. This was a mere clerical task. In failing to do this, he committed a clerical error or inadvertence. [44 Cust.Ct. at 64.]

Certainly Mr. Day, by virtue of his high position with BMC, had no more legal authority to make an independent judgment as to the meaning of the law than did that entry clerk. The function of Mr. Day and of the BMC accountants was to comply with the law by calculating the cost of production in accordance with the law as construed by the Customs Service or the courts. It was not their function to make an independent judgment of the law.

I would conclude that the phrase "error in the construction of a law" must mean "error in the construction of a law." Such error must refer to error made by a person or a body that had the legal authority to attempt the construction of the law in the first instance.

---

1.  82 C.J.S. *Statutes* § 316b (1956).

2.  16A *Id. Construction.*

Even accepting the majority's position that the statutory phrase "construction of the law" means something less than "construction of the law" as a legal function, the record before us does not make it at all clear that the error under consideration amounted to an error in the construction of the law.

The nature of the errors under consideration have been discussed by the majority to arise from misunderstandings by BMC accountants of American accounting terms and expressions. With a basic misunderstanding here not of statutory provisions, but of American accounting terms and expressions, how can the BMC accountants be charged with knowing the facts as they really were?

The Customs Court refused to receive testimony from the individuals involved in making those errors. I cannot conclude, as the majority did, that the BMC accountants knew the facts as they really were. Instead, I consider the error to be a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law, well within the spirit and purpose of § 520(c)(1).[3]

**3.** Appellant has cited testimony of the Assistant Secretary of the Treasury to indicate that the intention of § 520(c)(1) was to permit

the correction of errors and mistakes of the importers or the customs service in customs transactions which are adverse to the importer and which cannot be corrected under existing law. In the thousands of customs transactions, many such mistakes occur which should be corrected *in order to do justice to the importing public.* The Government has no interest in retaining duties which were improperly collected as a result of *clerical error, mistake of fact, or inadvertence.* The inability to make refunds in such cases results in great dissatisfaction and a feeling of injustice among importers * *. [Emphasis in original. *Simplification of Customs Administration: Hearings on H.R. 1535 before the House Comm. on Ways and Means,* 82 Cong., 1st Sess. 42 (1951)]