PPG INDUSTRIES, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 82-3-00421

Before RESTANI, *Judge.*

*Eugene L. Stewart, Esq.,* for plaintiff.

*Richard K. Willard,* Acting Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office and *Jerry P. Wiskin, Esq.,* for defendant.

(Decided March 28, 1984)

RESTANI, *Judge:* Plaintiff in this action challenges the Customs Service's refusal to reliquidate the merchandise in issue, certain bipolar diaphragm electrolyzers ("electrolyzers") and parts thereof, from Italy which are used in the production of chlorine. This case is before the court on the motion of plaintiff, PPG Industries, Inc. ("PPG") and the cross-motion of the Government for summary judgment. The subject merchandise was entered at the port of Pittsburgh, Pennsylvania in November of 1970, and liquidated in October of 1978.

At the time of entry, plaintiff did not claim duty-free treatment of the merchandise and did not file a Temporary Importation Bond ("TIB") in accordance with Schedule 8, Part 5C, Tariff Schedules of the United States ("TSUS"), and pursuant to 19 C.F.R. § 10.31 (1983). Upon liquidation, the United States Customs Service ("Customs") classified the merchandise under a dutiable item.

Plaintiff claims in this action that the merchandise was experimental in nature, was effectively destroyed and, consequently, was entitled to duty-free classification under item 864.30, TSUS.[1] Plaintiff argues that (1) Customs should have granted its claim for reliquidation under section 520(c)(1), Tariff Act of 1930, as amended, 19 U.S.C. § 1520(c)(1) since the merchandise covered by the subject entries was improperly classified due to a mistake of fact or other inadvertence not amounting to an error in the construction of law; or, in the alternative, (2) that the Customs Service should have granted its protest under 19 U.S.C. § 1514, since the merchandise covered by the subject entries was improperly classified. In so claiming, plaintiff seeks to have the merchandise entered under a TIB on a *nunc pro tunc* basis.

Defendant, in opposition, contends: (1) that plaintiff's claims for reliquidation under § 1520(c)(1) are untimely; (2) that there was no mistake of fact or inadvertent error made in the entry of plaintiff's merchandise remediable under § 1520(c)(1); and (3) that the merchandise is not qualified for classification under TSUS item 864.30 because plaintiff has not complied with the prerequisites for duty treatment.

The critical issue in this case is whether plaintiff is excused from complying with Headnotes 1 and 3, Part 5, Subpart C, Schedule 8, TSUS and 19 C.F.R. § 10.31. These provisions detail the bonding requirements necessary for duty-free treatment under TSUS item 864.30. The plaintiff's claim under § 1520(c)(1) fails since the court

---

[1] Item 864.30, TSUS, covers "Articles intended solely for testing, experimental, or review purposes, including plans, specifications, drawings, blue-prints, photographs, and similar articles for use in connection with experiments or for study * * * ."

finds that plaintiff alleges, at most, an error in the construction of law. Because the plaintiff failed to file the bond required for duty-free treatment under 864.30, TSUS, the court finds no merit in plaintiff's alternate claim that the subject merchandise covered by the entries was improperly classified under a dutiable item. It is, therefore, unnecessary to reach the questions of whether or not the present merchandise was experimental and therefore qualified for free entry under item 864.30, and whether or not that merchandise was destroyed within the meaning of Headnote 3, Part 5, Subpart C, Schedule 8, TSUS.[2] As will be developed more fully *infra*, plaintiff's motion for summary judgment is denied; defendant's cross-motion is granted.

"In ruling on cross-motions for summary judgment, the court must determine if there exist any genuine issues of material fact and, if there are none, decide whether either party has demonstrated its entitlement to judgment as a matter of law." *American Motorists Insurance Co.* v. *United States,* 5 CIT 33 (1983) *citing Carson M. Simon & Co.* v. *United States,* 3 CIT 4 (1982); *S. S. Kresge Co.* v. *United States,* 77 Cust. Ct. 154, 157, C.R.D. 76–6 (1976). On these cross-motions for summary judgment, each party has submitted a statement of allegedly undisputed material facts in compliance with Rule 56(i). Although the parties differ on a variety of points, these differences present no genuine issues of *material* facts which would require trial for the purpose of deciding these cross-motions.

The record reveals that the subject merchandise, two electrolyzers, are electrochemical cells used for the production of chlorine. They were jointly designed by PPG and Oronzio de Nora Impianti Elettrochimici ("de Nora"), the Italian manufacturer. The electrolyzers were constructed and tested in Italy, then disassembled for shipment to the United States for assembly and operation by PPG at its Natrium, West Virginia commercial facility.

Similar electrolyzers were imported by PPG and entered during a period from 1969 to 1973 at various ports for assembly and operation by PPG at several of its commercial facilities. Many of the entries covering this merchandise were involved in a predecessor suit instituted by PPG, which invoked 19 U.S.C. § 1520(c)(1) to request reliquidation and reclassification based upon an alleged mistake of fact and inadvertence resulting in the classification of the subject merchandise under a duty-bearing item instead of under 864.30, TSUS. *See PPG Industries, Inc.* v. *United States,* 4 CIT 143, Slip Op. 82–83 (October 5, 1982) (hereafter *"PPG I"*). In *PPG I,* the court dismissed the complaint because plaintiff had failed to bring to Customs' attention any information with sufficient particularity to allow remedial action under 19 U.S.C. § 1520(c)(1), and because

---

[2] Because neither claim succeeds on its merits it is not necessary for the court to address the additional question of whether the protests filed by PPG five days after liquidation raise a timely claim for relief under § 1520(c)(1) as well as a timely challenge to classification of the subject articles under § 1514(a)(2).

plaintiff had failed to give timely notice to Customs as required by 19 U.S.C. § 1520(c)(1).

The electrolyzers in the present action, covered by consumption entry numbers 101367 and 101398, were entered on November 17, 1970 and November 19, 1970, respectively. PPG was the importer of record for the two entries.

Shortly before the importation of the subject merchandise, PPG's Manager of International Traffic, Mr. Lloyd W. Kempf ("Kempf" or "Mr. Kempf"), retained the firm of R. L. Swearer Company, a licensed customhouse broker in Pittsburgh, Pennsylvania, to attend to the details of customs clearance. Mr. William J. Twigger ("Twigger" or "Mr. Twigger"), the owner of the licensed customhouse brokers firm retained by PPG, acting on behalf of PPG, caused to be prepared two consumption entries for customs clearance, which were submitted to Customs in November 1980. Mr. Twigger had a well-established relationship with PPG, as he had handled PPG's account since 1949.

Twigger used De Nora's commercial invoice to prepare the consumption entry which he submitted on behalf of PPG with other materials to Customs. The invoice stated "Experimental material," "NO CHARGE" and *"Value for Customs purposes only U.S. $5,100.00."* Based upon the above-described information and his long time experience and expertise in the customs area, Twigger entered the merchandise under item 661.70, TSUS, at 8.5 per cent.

Approximately two months after entry, on January 15, 1971, Kempf sent Twigger a letter in which he mentioned the experimental nature of the imported articles. Furthermore, Kempf stated his belief that the items should receive duty-free treatment and requested that Twigger work with Customs on the matter. Twigger filed the letter and did not notify Customs concerning the matter.

Neither Twigger nor Kempf, nor any other agent for PPG, notified Customs of any experimental use of the electrolyzers, mistake on the entry, or intention to enter the articles duty-free under item 864.30, TSUS, until January 8, 1976. Notwithstanding that in early July 1973 Mr. Kempf was in contact with the involved Customs import specialist, Mr. Michael Kutchak, concerning the subject merchandise, he failed to raise any issue concerning the experimental nature of the electrolyzers. On January 8, 1976, plaintiff's counsel raised for the first time with Customs the subject of PPG's possible entitlement to duty-free entry treatment under item 864.30, TSUS, based upon the alleged experimental nature of the merchandise, and the alleged destruction of the electrolyzers.

On October 20, 1978, Customs liquidated the subject entries under item 688.40, TSUS, at eight (8) per cent *ad valorem.* On October 25, 1978, PPG filed protests numbered 1104-8-000010 and 1104-8-000011 as well as "Applications for Further Review" with the District Director at Philadelphia.

In Ruling 061541, dated September 12, 1980, Customs rejected PPG's claim for reliquidation under section 1520(c).[3] That ruling held, *inter alia,* that "[i]f the broker failed to note documentary evidence on file that should have alerted him to the possibility of duty-free entry under item 864.39, TSUS, this omission can only be characterized as negligent inaction or ignorance of a provision of law. Errors of this kind are excluded from relief under section 520(c)(1)." Customs Ruling 061541 at 2 (September 12, 1980). The Customs ruling continued "[t]he importer's ignorance or unawareness of item 864.30, TSUS, for whatever reason, is likewise an error of law, excluded from relief under section 520(c)(1)." *Id.* The ruling also held that:

> [i]n the instant case, the fact that the merchandise was experimental was known to the importer and should have been known by the broker from information given to him. Their failure to realize the legal significance of the experimental nature of the merchandise was an error of law, not correctable under section 520(c)(1).

*Id.*

Plaintiff instituted this suit on March 27, 1982.

Section 520(c) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1520(c)(1) [4] provides in pertinent part as follows:

> (c) Notwithstanding a valid protest was not filed, the appropriate customs officer may, in accordance with regulations prescribed by the Secretary, reliquidate an entry to correct—
>
> (1) a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, or other customs transaction, when the error, mistake, or other inadvertence is brought to the attention of the appropriate customs officer within one year after the date of liquidation or exaction
> * * *

19 U.S.C. § 1520(c)(1) (1982).

It is clear that a successful § 1520(c)(1) claim would entitle plaintiff to validly file the required bond at a later time than that provided for entries which do not involve clerical error, mistake of fact, or other inadvertence within the meaning of § 1520(c)(1). 19 C.F.R. § 10.31(g); [5] *see also C. J. Tower & Sons of Buffalo, Inc.* v.

---

[3] PPG sought reconsideration of this decision and Customs again rejected the request by letter Ruling 542609 on January 8, 1982, which incorporated the reasons set forth in Ruling 0615541.

[4] The differences between this provision and the statute as it read in 1970 are irrelevant here.

[5] Section 10.31(g) of Title 19 provides in relevant part as follows:
Claim for entry under Schedule 8, Part 5C, Tariff Schedules of the United States may be made for articles of any character described therein which have been previously entered under any other provision of law and the entry amended accordingly upon compliance with the requirements of this section * * *, even though released from Customs custody if it is established that the original entry was made on the basis of clerical error, mistake of fact, or other inadvertence within the meaning of section 520(c)(1), Tariff Act of

*United States,* 68 Cust. Ct. 17, 336 F.Supp. 1395 (1972), *aff'd,* 61 CCPA 90,499 F.2d 1277 (1974). The question therefore becomes whether plaintiff has presented a situation in which this court can conclude that clerical error, mistake of fact or other inadvertence within the meaning of § 1520(c)(1) has occurred.

Section 1520(c)(1) is not remedial for *every* conceivable form of mistake or inadvertence adverse to an importer, but rather the statute offers "limited relief in the situations defined therein." *Godchaux-Henderson Sugar Co., Inc.* v. *United States,* 85 Cust. Ct. 68, 496 F.Supp. 1326, 1331 (1980) *citing Phillips Petroleum Co.* v. *United States,* 54 CCPA 7, 11 (1966); *accord C. J. Tower & Sons of Buffalo* v. *United States, supra.*

"A 'mistake of fact exists where a person understands the facts to be other than they are, whereas *a mistake of law exists where a person knows the facts as they really are but has a mistaken belief as to the legal consequences of those facts.' " Hambro Automotive Corp.* v. *United States,* 66 CCPA 113, 118, 603 F.2d 850, 853 (1979) *citing* 58 C.J.S. *Mistake,* § 832. "It has been defined as a mistake which takes place when some fact which indeed exists, is unknown, or a fact which is thought to exist, in reality does not exist * * *." *Hambro Automotive Corp.* v. *United States, supra* at 118 *citing* Pomeroy, Equity Jurisprudence § 839 (1941). A Treasury Decision defines mistake of fact as follows:

> *Mistake of fact* occurs when a person believes the facts to be other than they really are and takes some action based on that erroneous belief. The reason for the belief may be that a fact exists but is unknown to the person or he may be convinced that something is a fact when in reality it is not. For example, an importer's agent may be convinced that the importer wishes him to make a consumption entry for goods and he does so. The true fact is that the importer desired an in-bond entry to be made in the particular case. If the true facts had been known to the agent, an in-bond entry would have been filed.

94 Treas. Dec. 244, 245–46, T.D. 54848 (1959).

An error in the construction of the law, on the other hand, which should be considered in relation to the alleged mistake of fact,[6] was defined in the same Treasury Decision as follows:

> *Error in the construction of a law* occurs when a person knows the true facts of a case *but has a mistaken belief of the legal consequences of those facts and acts on that mistaken belief.* For example, the exact physical properties of certain merchandise and all other pertinent facts for classification of that merchandise are known. In applying the law the mer-

---

1930, as amended, and was brought to the attention of the Customs Service within the time limits of that section.

19 C.F.R. § 10.31(g) (1983).

[6] "A mistake of fact is any mistake except a mistake of law." *C.J. Tower & Sons of Buffalo, Inc.* v. *United States, supra* 336 F. Supp at 1399.

chandise is classified as an entirety but it should have been classified as separate articles. Or the claim is made that an appraiser acts on incomplete information but the appraiser concludes he would have acted in the same way even if the missing information had been before him. If the appraiser errs in such a case, he commits error of law.

*Id.* (emphasis supplied).

Inadvertence, on the other hand, has been defined variously as an oversight or involuntary accident, or the result of inattention or carelessness, and even as a type of mistake. *C.J. Tower & Sons of Buffalo, Inc.* v. *United States, supra; see also Hambro Automotive Corp.* v. *United States, supra* 66 CCPA at 118.

A clerical error is a mistake made by a clerk or other subordinate, upon whom devolves no duty to exercise judgment, in writing or copying the figures or in exercising his intention. *S. Yamada* v. *United States,* 26 CCPA 89 (1938); *Geo. Wm. Rueff, Inc.* v. *United States,* 41 Cust. Ct. 399, Abs. No. 62433 (1958); *Import Export Service of N.J.* v. *United States,* 38 Cust. Ct. 235, C.D. 1869 (1957).[7]

The case presented is not one involving clerical error or inadvertence. As to clerical error, any alleged error in this matter can hardly be construed as clerical in nature because Mr. Twigger exercised judgment and intention when he entered the subject merchandise. The court also rejects any claim of inadvertence, since its application to the facts of this case would require an overly broad reading of that term. This case does not involve mere carelessness, a slip of the pen or an accidental failure to attach a document.

Consequently, plaintiff's entitlement to the relief requested depends upon whether the mistake alleged is of fact or, rather, is in the construction of a law within the meaning of § 1520(c)(1).

Under section 1520(c)(1) three conditions must be satisfied before the appropriate Customs officer is authorized to reliquidate an entry to correct a "mistake of fact" (paraphrasing):

(1) A mistake of fact must exist;
(2) The mistake of fact must be manifest from the record or established by documentary evidence; and
(3) The mistake of fact must be brought to the attention of the Customs Service within the time requirements of the statute.

As to the first requirement, plaintiff relies heavily upon the case of *C. J. Tower & Sons of Buffalo, Inc.* v. *United States, supra,* for the proposition that the present case involves a mistake of fact. The *Tower* case involved the importation of certain war materials

[7] Clerical error has commonly been found where mistakes were made in copying or typing figures or where figures have been transposed. *See, e.q., Howard Rapaport, D.B.A. The In-Novo Engineering and Development Co.* v. *United States,* 4 CIT 215 (1982); *see also Louis Aisenstein & Bros., Inc.* v. *United States,* 34 Cust. Ct. 268, Abs. No. 58715 (1955); *B. A. McKenzie & Co., Inc.* v. *United States,* 44 Cust. Ct. 491, Abs. No. 64252 (1960); *N. M. Albert Co., Inc.* v. *United States,* 34 Cust. Ct. 102, C.D. 1686 (1955); *S. Jackson & Son, Inc.* v. *United States,* 40 Cust. Ct. 511, Abs. No. 61794 (1958); *Charles Neidert* v. *United States,* 30 Cust. Ct 445, Abs. No. 57306 (1953); *Lansen-Naeve Corp.* v. *United States,* 15 Cust. Ct. 329, Abs. No. 50703 (1945).

purchased abroad. In that case, both parties conceded that neither the district director nor the importer were aware of the nature of the materials which gave rise to eligibility for duty-free treatment, until after liquidations became final.

The court in *PPG I* considered this issue. *See* discussion, *supra* pp. 4–5. *PPG I* was decided on the issues of timeliness and sufficiency of the request for reliquidation under § 1520(c)(1), issues which we do not decide here. Although all other statements are *dicta,*[8] *we are persuaded by the court's reasoning, as well as the particular relevance which such dicta* carries with it based upon identical issues, operative facts, parties, and nearly identical subjects of import.

In *PPG I,* the court stated:

> In *Tower* the remediable mistake was the lack of knowledge on the part of the importer until after liquidation that the subject merchandise was in fact to be used as emergency war material, which was duty free.
> Any mistake which might have been made in the instant action was qualitatively different from the mistake in *Tower* * * * [In that case] the plaintiff-importer was mistaken as to the use to which his merchandise would be put. In the instant action the plaintiff was under no such misapprehension. The company officials admitted knowing the intended use to which the subject merchandise would be placed.

*Id.* at 7.

The key distinction between *Tower* and this case is a temporal one. The importer in *Tower* was unaware of the nature of the materials being imported prior to liquidation. Therefore, he doubtlessly was unable to enter them properly free of duty at the time of entry. In contrast, plaintiff PPG was aware of the nature of its subject imports at all times prior to entry and liquidation, and the *only* knowledge which PPG lacked was of the pertinent duty-free entry provisions and requirements relating to TSUS item 864.30.

In *PPG I,* the court stated further that "[t]he mistake alleged by plaintiff is similar to the mistake of law found in *Hambro Automotive Corp.* v. *United States,* 66 CCPA 113, 603 F.2d 850 (1979). There the exporter knew the facts regarding its cost of production but erred in the assessment of those costs under the applicable law." *Id.*

The *Hambro Automotive* case is the leading authority on the distinction between a mistake of fact and an error in the construction of a law. In that case, the error which the plaintiff sought to correct consisted of the manufacturer's use of general expenses and profits in the home market rather than those of the export market in the cost of production figures it supplied to Customs. The plain-

---

[8] Only the holding of a case is entitled to recognition and respect as binding authority. *Dictum,* however, may be considered persuasive authority. *See* Re, *Stare Decisis* 79 F.R.D. 509, 512.

tiff in *Hambro* explained this mistake as a misunderstanding of American accounting terms and expressions. However, the court in *Hambro* stated:

> However it is expressed the mistakes which were made must be considered as being, in essence, misunderstandings of the law, namely, the law governing cost of production * * * The mistakes were interpretational and decisional. They were not the careless mistakes in routine office tasks, the consequences of which section 520(c)(1) was intended to alleviate. *See Morimura Bros.* v. *United States,* 160 F.280 (1908). *See also S. Yamada* v. *United States,* 26 CCPA 89, T.D. 49628 (1938).
>
> *Hambro Automotive Corp.* v. *United States,* 81 Cust. Ct. 29, 30–31, 458 F.Supp. 1220 (1978) (J. Watson), *aff'd,* 603 F.2d 850 (1979).

Similarly, in the present action, we must look to PPG's knowledge of the facts and how it intended to use them. It is clear that PPG was fully aware of the alleged experimental nature of the subject electrolyzers, but believed the legal consequences of entering them as they did to be other than they were. Plaintiff argues in its Memorandum of Points and Authorities in support of its motion for summary judgment at pages 14–15:

> While PPG, of course, knew the facts, its cognizant personnel did not know that Item 864.30, TSUS, existed.

Hence, we can draw no other conclusion but that no mistake of fact was involved in the present case, and that any "error" which occurred, if it occurred, amounted to an error in the construction of law or to ignorance of the law.

As to the second requirement, plaintiff has failed to establish, as it must, that any mistake of fact (not amounting to an error in the construction of the law) was manifest from the record or established by documentary evidence. Plaintiff has established the following. Before entry, Mr. Kempf believed that the subject articles were entitled to duty-free entry, of which he informed the customhouse broker, Mr. Twigger. Kempf's position was based upon a "belief that duty was normally assessed on products to protect American industry, and that no duty would be assessed on products where similar merchandise was not manufactured in the U.S." Kempf Affidavit at ¶7. This in itself was ignorance of the law or a mistake in the construction of the law. Had PPG's employee, Kempf, known the applicable law, or construed the law before it properly, he would have filed or caused to be filed the requisite bond and related special entry papers in order to entitle PPG to duty-free treatment of its goods. There is also nothing in the record to indicate that at the time of entry plaintiff intended to and was capable of meeting the requirements related to duty-free entry treatment.

Schedule 8, Part 5C, Headnote 1(a) provides as follows:

The articles described in the provisions of this subpart, when not imported for sale or for sale on approval, may be admitted into the United States without the payment of duty, under bond for their exportation within 1 year from the date of importation, which period, in the discretion of the Secretary of the Treasury, may be extended, upon application, for one or more further periods which, when added to the initial 1 year, shall not exceed a total of 3 years * * *

Schedule 8, Part 5C, Headnote 3 provides the following:

Upon satisfactory proof that any article admitted under item 864.30 has been destroyed because of its use for any purpose provided for therein, the obligation under the bond to export such article shall be treated as satisfied.

19 C.F.R. § 10.31 [9] sets forth in further detail the requirements associated with entry of articles brought into the United States temporarily and claimed to be exempt from duty under Schedule 8, Part 5C, TSUS. In particular, section 10.31(a)(3) states:

(3) In addition to the data usually shown on a regular consumption entry summary, each temporary importation bond entry summary shall include:

(i) The TSUS item number under which entry is claimed.

(ii) A statement of the use to be made of the articles in sufficient detail to enable the district director to determine whether they are entitled to entry as claimed, and

(iii) A declaration that the articles are not to be put to any other use and that they are not imported for sale or sale on approval.

In this case, while the subject articles were entered in 1970, and the entries were not liquidated until 1978, the plaintiff-importer failed until 1976 to notify Customs as to the experimental nature of the subject merchandise, much less as to an intention to seek eligibility for duty-free treatment under item 864.30, TSUS. It would be improper to permit plaintiff under § 1520(c)(1) to secure a TIB later than the regulations permit, based upon changed circumstances (*i.e.* unforeseen destruction or export of the merchandise) or changed intentions (later decision that it would have been more beneficial to have filed the TIB and received duty-free treatment and exported or destroyed). We believe that these concerns are particularly acute in a case such as this, in which a virtual laundry list of "inadvertences" or "mistakes" are alleged,[10] where the al-

---

[9] There are no material differences between these regulations as they read at the time of entry and their form today.

[10] The more alleged mistakes and inadvertences the plantiff cites, the less plaintiff's § 1520(c)(1) claim seems plausible. Plantiff's list includes: Kempf's failure to raise the issues of mistake or experimental use to Customs, despite his contact with the import specialist personally involved with these entries who sought information concerning the value of the entries; Twigger, an experienced, licensed customhouse broker's failure to recognize the appropriate and applicable laws and their requirements regarding duty-free entry under item 864.30, TSUS, as well as Twigger's inaction in the face of a letter from his principal, PPG, which requested that he work with Customs on the duty-free issue.

leged error amounts to one in the construction of a law, and where the importer failed to do anything at all about the "error" for six years after entry.

Plaintiff's alternative claim is that, regardless of its failure to succeed in its request for relief under § 1520(c)(1), it is still entitled to relief because Customs should have granted its protest of improper classification as a matter of law under 19 U.S.C. § 1514. The court finds this claim to be equally without merit for the reason that plaintiff failed to comply with mandatory regulations which, only when complied with, would entitle plaintiff to duty-free treatment under 864.30, TSUS.[11]

In *Border Brokerage Co.* v. *United States*, 36 CCPA 83, C.A.D. 402 (1949), importers failed to comply with certain regulations prescribed by the Secretary of the Treasury, which required the filing of affidavits of intended and actual use of the merchandise as feedstuffs in order to obtain free entry. The court affirmed the Customs Court's dismissal of the importers' protests. Likewise, in *International Forwarding Co.* v. *United States*, 9 Cust. Ct. 428 (1942), due to ignorance of the law an importer failed to file certain documents relating to tax exemption. The entry was liquidated dutiable as entered. Some time later, the importer discovered that, had a shipper's declaration been filed in connection with the entry, in accordance with T.D. 49643 certain portions of the merchandise would have been entitled to exemption from the tax imposed by the revenue act. The court denied its claim to duty-free entry treatment.[12]

In the present action there is no dispute that the plaintiff did not secure the required bond (TIB), nor did plaintiff file numerous other assorted documents which are specially required for free entry treatment. Because the plaintiff failed to comply with the pertinent regulations, as well as with the terms of the Headnotes accompanying the claimed duty-free entry TSUS item, its classification claim fails as a matter of law. Accordingly, the plaintiff's motion for summary judgment is denied; the defendant's cross-motion is granted.

––––––––––

[11] It is only success under § 1520(c) which will relieve plaintiff of the obligation to comply with bonding requirements at the time of entry. Outside of this provision, compliance, and consequently duty-free treatment, is impossible on a *nunc pro tunc* basis. 19 C.F.R. § 10.31(g).

[12] In this regard, *see also* McDonnell Douglas Corp. v. *United States*, 75 Cust. Ct. 6 (1975), *Atlantic Produce Company* v. *United States*, Abstract No. 57413 (1953), *McBride* v. *United States*, 1 Cust. App. 293, T.D. 31354, *aff'g.* T.D. 30164 and Abstract No. 22512, T.D. 30234 (1911), and *George L. Walsh* v. *United States*, 61 CCR 252, C.D. 3591 (1968).