MARPOSS GAUGES CORP., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 83-8-01143

Before RESTANI, *Judge.*

(Decided April 10, 1985)

*Richard Kulics* for plaintiff.

*Richard K. Willard,* Acting Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, and *Saul Davis,* United States Department of Justice, Civil Division, for defendant.

RESTANI, *Judge:* Defendant has moved to dismiss this action for lack of subject matter jurisdiction on the ground that a summons was not timely filed as required by 28 U.S.C. § 2636(a)(1) (1982). Alternatively, defendant urges that plaintiff failed to file a protest with the Customs Service ("Customs") and therefore, pursuant to section 514 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514 (1982), no summons could issue from this court. Plaintiff, on the other hand, asserts that a letter to Customs served as a valid protest and that all filings were timely.

This case arises out of the export of a bench gauge system from plaintiff's Michigan place of business by its vice-president for engineering, Mario Bassi, for use in training employees at a related Canadian corporation. The system was sent to Canada in February, 1982, and returned on March 3, 1982. Entry was made on March 3, 1982, by Customs broker C.J. Tower & Sons ("Tower") of Buffalo, New York, which requested that the system be given duty-free status as previously imported goods, exported under lease and returned, pursuant to item 801.00 of the Tariff Schedule s of the United States ("TSUS"). On March 26, 1982, however, Customs denied Tower's requested classification and assessed a duty under TSUS item 712.49. Liquidation occurred on July 2, 1982.[1]

On October 4, 1982, Tower submitted a letter to the district director of Customs seeking reliquidation and reclassification.[2] Along

---

[1] On November 26, 1982, plaintiff's surety filed a protest of the liquidation. The protest was denied on January 24, 1983. In any event, because it was untimely that protest cannot inure to plaintiff's benefit. *See* 19 U.S.C. § 1514(c)(2) (1982).

[2] The letter of October 4, 1982, read:

DISTRICT DIRECTOR OF CUSTOMS,
*Detroit, MI*
Subject: Refund Request
Entry: 82-613277
Liquidated: 7/2/82
Tariff Item: 810.20

DEAR SIR: We have enclosed a letter dated September 27, 1982 from Marposs Gauges explaining the export to Canada of the gauge system covered by this entry. We have also enclosed a signed CF-4455 and a signed CR-3299.

The signer of the CF-3299 is Mario Bassi, the person who conducted the training in Canada. In effect, the gauge system was his tools of the trade.

with that letter, Tower included copies of Custom's forms CF–4455 and CF–3299. The forms were intended to support a different classification from that claimed in the original entry papers.

Customs treated Tower's letter as a request for relief due to clerical error or mistake of fact, pursuant to section 520(c)(1) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1520(c)(1), and denied the claim with a form reply dated October 22, 1982.[3] The form noted that plaintiff could resubmit its request with additional information or file a protest in accordance with section 514 of the Tariff Act. A handwritten portion of the form suggested that plaintiff submit a letter from Mr. Bassi.

On December 1, 1982, Tower submitted a second letter to the district director along with a letter from Mr. Bassi in which he explained his use of the bench gauge system in Canada.[4] Customs responded with another § 520 form on February 8, 1983. That form reply again informed plaintiff's agent of its option to submit further information or to file a protest.

Neither plaintiff nor Tower on behalf of plaintiff filed any papers with Customs after receiving the response of February 8, 1983. On August 8, 1983, however, plaintiff commenced an action in this court by filing a summons. Plaintiff asserts that the first Tower letter (dated October 4, 1982) was a section 520(c)(1) request which was denied on October 22 and then seasonably protested in the form of Tower's letter of December 1, 1982. Defendant argues that either both letters were § 520(c)(1) requests in which case there was no protest filed, or that both letters were protests in which case the first letter triggered the 180-day statute of limitations found in 28 U.S.C. § 2636, thereby rendering the summons of August 8, 1983, untimely. Additionally, defendant argues that if the letter of October 4, 1982, was a protest it was untimely, and therefore no summons may issue based on that protest.

---

Based on the submitted documents, we ask that this entry be reliquidated and the gauge system be reclassified under tariff item 810.20, duty-free.
Thank you.
Respectfully,

C.J. TOWER & SONS.

[3] Since the time for protest had elapsed, Customs was constrained to view the letter of October 4, 1982, as a § 520(c)(1) request, although a deficient one. In any case, Customs' view that the letter was a § 520(c)(1) request is of no effect. *Cf. Mattel, Inc.* v. *United States,* 72 Cust. Ct. 257, 266, 377 F. Supp. 955, 963 (1974).

[4] The letter of December 1, 1982, read:
Subject: Refund Request
Entry: 82–613277
Liquidated: 7/2/82
Customs Team: 18

DEAR SIR: As suggested in your denial of October 22, 1982, we are enclosing a letter from Mario Bassi in an attempt to have this bench gauge system reclassified under a duty free tariff item.

We have enclosed a letter dated November 23, 1982 from Mr. Bassi explaining the reason for the export of this item to Canada and its subsequent return to the United States. It seems clear that this product was used as Mr. Bassi's tools of the trade and should be accorded duty-free treatment upon its return to the United States.

We would appreciate your review of this file one more time.
Thank you.
Respectfully,

C.J. TOWER & SONS.

Plaintiff relies on two decisions which hold that a letter requesting relief under § 520(c)(1) is a sufficient protest. In *Mattel, Inc.* v. *United States,* 72 Cust. Ct. 257, 377 F. Supp. 955 (1974), plaintiff filed letters requesting relief under § 520(c)(1) within 60 days of liquidation. This was within the time for filing a protest. After noting that letters were sufficient protests if they apprised Customs of the importer's intent and the relief sought, the court allowed plaintiff to amend its complaint to utilize the original § 520(c)(1) request letters as § 514 protests of the liquidations. The court relied on the *Mattel* decision in *Labay International, Inc.* v. *United States,* 83 Cust. Ct. 152 (1979). In that case, drilling equipment was exported to Africa and subsequently sent back to Texas. Plaintiff sought duty-free treatment as American goods returned. Customs, however, assessed a duty due to lack of documentation. Less than two months later, plaintiff sent the district director a letter requesting § 520(c)(1) reliquidation. The letter set out all relevant particulars, but the request was denied. Ninety-one days after liquidation plaintiff filed a protest of the original liquidation, which protest was denied as untimely. After reiterating the rationale behind *Mattel,* the *Labay* court held that the § 520(c)(1) request letter was a sufficient § 514 protest of the original liquidation.[5]

Although *Mattel* and *Labay* appear at first glance to be factually similar to the instant matter, both cases are inapposite. In both *Mattel* and *Labay,* the court allowed the *first* document submitted for § 520(c)(1) review to serve as a protest. Here, however, plaintiff seeks to have the second of two quite similar letters declared a protest by claiming that the first letter is a § 520(c)(1) request. Plaintiff thus seeks to submit a series of documents and then to select retroactively the letter which satisfies the time requirements for judicial review. Such an argument would reach far beyond the holdings of *Mattel* and *Labay.*[6] It is also contrary to the policy behind the decisions finding second protests of no effect. *See American Bosch, Div. of AMBAC, Ind., Inc.* v. *United States,* 82 Cust. Ct. 67, 68–69 (1979), *citing Russ Togs, Inc.* v. *United States,* 79 Cust. Ct. 119 (1977).

More importantly, because it missed the ordinary 90-day deadline for filing a protest, it is crucial to plaintiff's position that the letter of October 4, 1982, be a true § 520(c)(1) request to reliquidate. Only a valid request under § 520(c)(1) will save plaintiff from the requirement of filing a protest within 90 days of liquidation, a deadline which it missed. The present form of § 520(c)(1) is intended to be an expanded vehicle for correcting inadvertences and factual errors.

---

[5] Although a protest was deemed to have been timely filed, the *Labay* case was dismissed because the summons had not been filed within the required 180 day period. *Labay International, Inc.* v. *United States,* 83 Cust. Ct. 152, 155 (1979).

[6] This court has been liberal in determining what constitutes a § 514 protest. *See, e.g., A. Giurlani & Bros., Inc.,* v. *United States,* 9 CIT 60, Slip Op. 85–17 (February 12, 1985). One reason may be that the 90-day period is short and parties may act in haste, without observing the proper forms. The corresponding period for seeking § 520(c)(1) relief is considerably longer, and different standards may apply.

See the discussion of the legislative history of § 520(c)(1) in *C.J. Tower & Sons of Buffalo, Inc.* v. *United States,* 68 Cust. Ct. 17, 336 F. Supp. 1395 (1972), *aff'd,* 61 CCPA 90, 499 F.2d 1277 (1974). Nonetheless, the terms of § 520(c)(1) are quite specific. Under § 520(c)(1), plaintiff must claim, within one year of liquidation, a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of law.[7] *See Hambro Automotive Corp.* v. *United States,* 66 CCPA 113, 603 F.2d 850 (1979); *PPG Industries, Inc.* v. *United States,* 7 CIT 118, Slip Op. 84–27 (March 28, 1984). At most, plaintiff seems to assert in its letters that it made a legal error in claiming that TSUS item 801.00 applied to the entry. Plaintiff alleges no mistake of fact in its letter of October 4, 1982; it merely seeks classification under another TSUS item. Plaintiff argues that underlying the letter of October 4, 1982, there was a lack of knowledge on the part of the customs broker of the nonexistence of a lease. The importer, however, clearly knew that no lease existed and it never indicated to its broker that any lease covered the transaction. If the broker was actually mistaken regarding the existence of a lease, it should have been made that fact clear to Customs in one of its post-liquidation letters. It was not until this lawsuit was filed, more than one year after liquidation, that any factual error was alleged.[8] The only error made known to Custom during the one-year period was plaintiff's legal error in choosing a particular TSUS item.

This case involves an experienced customs broker, capable of noting the correct TSUS item on entry papers and timely filing protest. The broker here may not escape the time limit for filing a protest by belatedly choosing a different TSUS item and then supplying Customs with a new set of facts to support the application of the item. If the broker's original mistake was only the legal error of choosing an incorrect TSUS item, such a course of action is not available. *Cf. Hambro Automotive Corp.* v. *United States,* 66 CCPA 113 F.2d 850 (1979); *United China & Glass Co.* v. *United States,* 66 Cust. Ct. 207 (1971); *Fibrous Glass Products, Inc.* v. *United States,* 63 Cust. Ct. 62 (1969). Furthermore, if the protest period is to have any meaning, not every legal error may be transformed into one of fact upon rethinking by litigating attorneys. The requirement that the factual error be made known to Customs during the administrative process successfully precludes such tardy redefinition.

---

[7] Section 520(c)(1) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1520(c)(1) (1982), provides:

(c) Reliquidation

Notwithstanding a valid protest was not filed, the appropriate customs officer may, in accordance with regulations prescribed by the Secretary, reliquidate an entry to correct—

(1) a clerical error, mistake of fact or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in an entry, liquidation, or other transaction, when the error, mistake, or inadvertence is brought to the attention of the appropriate customs officer within one year after the date of liquidation or exaction;

\*     \*     \*     \*     \*     \*     \*

[8] There was no allegation of inadvertence or clerical error on the part of the broker. Plaintiff admits the broker exercised judgment in choosing TSUS item 801.00 in the first instance.

Consequently, the court has determined that the first letter by Tower to Customs, dated October 4, 1982, did not constitute a § 510(c)(1) request, which would allow plaintiff to file a protest within 90 days of the denial of such request. Because a timely protest was not filed, this court lacks jurisdiction over this action. *See* 19 U.S.C. § 1514 and 28 U.S.C. § 2636(a)(1). Accordingly, defendant's motion is granted and this action is hereby dismissed.