**CHRYSLER CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 83–10–01538.**

United States Court of International Trade.

June 26, 1987.

Ross & Hardies (Joseph S. Kaplan, Chicago, Ill., on the motion), for plaintiff, Chrysler Corp.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney in Charge, International Trade Field Office (Nancy E. Reich, New York City, on the motion), for defendant, U.S.

## MEMORANDUM OPINION AND ORDER

CARMAN, Judge:

Plaintiff Chrysler Corporation (plaintiff) moves for an order granting summary judgment pursuant to Rule 56 of the rules of this Court. Plaintiff's motion alleges the defendant United States (defendant), through its Customs Service (Customs), erred in failing to approve plaintiff's protests against Customs' failure to reliquidate certain entries under the authority of section 520(c)(1) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1520(c)(1) (§ 520(c)). Defendant cross moves for an order: (a) severing and dismissing the first cause of action alleged in the complaint as to an unnumbered protest; and (b) dismissing all of plaintiff's claims with respect to Protest Nos. 3801–2–001477 and 3801–2–001735 for lack of jurisdiction and/or for failure to state a claim upon which relief can be granted. Plaintiff's motion for summary judgment is denied. Defendant's cross-motion to sever and dismiss and to dismiss for lack of jurisdiction and for failure to state a claim is granted. This action is dismissed.

## BACKGROUND

Plaintiff commenced this action claiming Customs erred in its decision to deny plaintiff's protest of Customs' appraisal and liquidation of three entries of imported mer-

chandise consisting of used cutting tools, metal forming tools, and tool holders utilized in the manufacture of automobile parts. Plaintiff also claims Customs erred in denying plaintiff's request for reliquidation of the three consumption entries pursuant to § 520(c) and in denying plaintiff's subsequent protests of Customs' denials.

Both parties now move for dismissal and/or summary judgment pursuant to Rule 56 of the rules of this Court and have submitted their "Statement of Material Facts". Based upon the pleadings and papers contained in the Court file, the following material facts are not in dispute:

Plaintiff, a manufacturer of automobiles, imported certain used metal cutting and forming tools and tool holders under cover of three consumption entries at Detroit, Michigan: No. 81–579575, dated October 27, 1980; No. 81–579576, dated October 28, 1980; and No. 81–580373, dated December 12, 1980. For purposes of classification, the Tariff Schedules of the United States (TSUS) provide for separate classifications covering cutting tools, shaping tools, and tool holders. Plaintiff identified the composition of each machine entered and allocated these separate classifications among the applicable tariff provisions. These allocations were included in depreciation schedules attached to the entry papers plaintiff submitted upon importation of the used merchandise.

The entry papers included invoices prepared by Houdaille Industries of Canada Limited, the foreign shipper, which listed the original purchase price values for the imported merchandise. The invoices indicated the machines were used. The entry papers also included detailed depreciation tables showing the remaining lives and values of the imported used merchandise in accordance with plaintiff's standard depreciation practice. This depreciation information resulted in lower values attributable to the used merchandise than those values determined by Customs' depreciation formula. Customs rejected plaintiff's method of depreciation and applied a 10 percent per year depreciation to the value set forth on the Houdaille invoices, resulting in a depre-

ciation value greater than that of plaintiff's. All three entries of used merchandise were liquidated on October 2, 1981. Plaintiff did not file a proper protest objecting to the liquidation within 90 days in accordance with section 514 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514 (§ 514).

On May 28, 1982, plaintiff petitioned the District Director of Customs at Detroit, Michigan, by letter, requesting reliquidation of the entries pursuant to § 520(c). Plaintiff contended a mistake of fact or other inadvertence occurred in the liquidation of the entries. Customs denied plaintiff's reliquidation request only as to entry No. 81–579576 on June 23, 1982.

On September 20, 1982, plaintiff filed Protest No. 3801–2–001477, objecting to the denial of its petition to reliquidate entry No. 81–579576. Customs denied this protest, on October 14, 1982, as untimely, but this denial was later rescinded. The protest was approved for further review and ultimately denied on June 7, 1983. Customs took no action on the requests for reliquidation under § 520(c) with respect to entries Nos. 81–579575 and 81–580373.

On August 23, 1983, plaintiff filed its Protest No. 3801–3–001735 objecting to Customs' failure to act upon the request for reliquidation of entries Nos. 81–579575 and 81–580373. This protest was subsequently denied as premature by Customs on September 9, 1983.

Plaintiff filed this present action challenging Customs' denial of both protests, on October 25, 1983. In its complaint, plaintiff raised two causes of action. The first involved plaintiff's purported protest, filed pursuant to § 514, contesting the liquidation of all three entries of merchandise in question. The second concerned the requests for reliquidation filed by plaintiff pursuant to § 520(c).

Plaintiff's present motion for summary judgment rests only on the challenge to Customs' appraisal and liquidation of the entered used merchandise. Plaintiff contends Customs made a mistake, or an inadvertence occurred, as addressed in § 520(c) which states:

(c) Notwithstanding a valid protest was not filed, the appropriate customs officer may, in accordance with regulations prescribed by the Secretary, reliquidate an entry to correct—

(1) a clerical error, mistake or fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the appropriate customs officer within one year after the date of liquidation or exaction....

19 U.S.C.A. 1520(c)(1) (1980).

Plaintiff contends Customs failed to use the plaintiff's depreciation information, supplied with all the documents and invoices, to appraise the imported merchandise. Plaintiff argues this failure was due to Customs' disregard for or oversight of the submitted papers and amounted to a mistake or inadvertence as set forth in § 520(c). Therefore, argues plaintiff, Customs should have remedied those mistakes or inadvertences by reliquidation as requested.

Defendant, on the other hand, avers plaintiff's depreciation schedules were known and considered by Customs Service employees, but were ultimately rejected for Customs' depreciation rate, which was used to value the used merchandise. Defendant also moves for dismissal and/or summary judgment.

Defendant first asserts plaintiff's first cause of action, concerning the alleged § 514 challenge of the liquidation, was never filed; has not been substantiated by any proof as to having been filed; and has been abandoned subsequently by plaintiff, as evidenced by documents in defendant's interrogatories submitted to the Court. Therefore, defendant claims, this first cause of action should be severed and dismissed.

Defendant's second argument addresses plaintiff's second claim, Customs failed to adhere to the statutory mandate of § 520(c). Specifically, defendant alleges

this Court has no jurisdiction to consider plaintiff's claims because Customs had no authority to rescind its denial of plaintiff's protests of October 14, 1982.

Defendant also claims this Court lacks jurisdiction as to Chrysler's claims surrounding Protest No. 3801-3-001735 because plaintiff is objecting to Customs' denial of the remaining two protest petitions, denials which have not yet occurred.

Defendant further argues plaintiff has not stated a claim upon which relief can be granted because plaintiff has not satisfied the requirements of § 520(c) in order to succeed on its claim.

## DISCUSSION

This Court will decide motions for summary judgment within the following guidelines:

[S]ummary judgment ... is entirely appropriate ... where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.... The movant bears the burden of demonstrating absence of all genuine issues of material fact, ... the ... court must view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in its favor, ... and must resolve all doubt over factual issues in favor of the party opposing summary judgment....

*SRI International v. Matsushita Electric Corporation of America,* 775 F.2d 1107, 1116 (Fed.Cir.1985) (citations and footnotes omitted).

■ Defendant's first assertion, in its cross-motion, seeks to sever and dismiss plaintiff's first cause of action which alleges plaintiff filed a proper protest against the liquidation of all three entries pursuant to § 514(a). Defendant provides documentation of plaintiff's response to defendant's interrogatories in which plaintiff affirmatively "abandons the claim that it filed a protest on December 29, 1981." Plaintiff's Answers to Defendant's First Set of Interrogatories, # 5(a)–(c), *Chrysler Corp. v. United States,* Court No. 83–10–01538, Defendant's Exhibit E. Plaintiff does not

deny nor address this matter in its response to defendant's motion for dismissal. This Court holds plaintiff has abandoned this cause of action and severs and dismisses this portion of the complaint.

Under defendant's lack of jurisdiction argument, defendant claims plaintiff's Protest No. 3801–3–001735, which protests the District Director of Customs' failure to rule upon the plaintiff's May 28, 1982 reliquidation request petition, is untimely. Defendant maintains plaintiff protests conduct which never occurred, since its § 520(c) petitions for the 81–579575 and 81–580373 entries are still pending.

Plaintiff's Protest No. 3801–3–001735 was filed pursuant to 19 U.S.C. §§ 1514 and 1515(a). Section 1514 provides for a party to protest the following decisions of the District Director:

(a) The appraised value of merchandise;

(b) The classification and rate and amount of duties chargeable;

(c) All charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

(d) The exclusion of merchandise from entry or delivery under any provision of the Customs laws;

(e) The liquidation or reliquidation of an entry, or any modification thereof;

(f) The refusal to pay a claim for drawback; and

(g) The refusal to reliquidate an entry under section 520(c), Tariff Act of 1930, as amended (19 U.S.C. 1520(c)).

19 C.F.R. § 174.11 (1983). *Accord* 19 U.S.C. § 1514(a).

Under the present circumstances, plaintiff has protested a decision of the District Director not provided for in § 1514. Although plaintiff has not addressed this issue in its response memorandum, it could be argued plaintiff is protesting an alleged decision of the District Director to refuse to reliquidate by failing to act. Notwithstanding this argument, § 1515(a) provides the appropriate customs officer has until two years, from the filing of the protest, to make a decision on the protest. Defendant has correctly indicated that plaintiff has filed its No. 3801–2–001477 protest prematurely. This Court, therefore, lacks jurisdiction to consider this matter.

Defendant's other argument under its lack of jurisdiction contention states plaintiff's cause of action against the denial of a protest was also untimely filed. Plaintiff's original petition for reliquidation under § 520(c) was denied by Customs on June 23, 1982. On September 20, 1982, plaintiff filed Protest No. 3801–2–001477, objecting to the denial of its petition for reliquidation. Customs denied this protest as untimely on October 14, 1982, was convinced by plaintiff to rescind this denial, rescinded the denial, reviewed the protest, and ultimately denied the protest on June 7, 1983. Plaintiff then filed this action on October 25, 1983.

Defendant now argues Customs had no authority to rescind its denial of October 14, 1982 and reconsider the protest. The provisions of 28 U.S.C. § 2636(a)(1), defendant asserts, specifically requires a civil action, contesting the denial of a protest under § 515, be commenced within 180 days after the mailing of the denial notice. Defendant states the 180 day limitation ran from October 14, 1982, the first denial date, and not from June 7, 1983, the second denial date.

As support for the proposition Customs was without authority to revoke or rescind the denial, defendant refers to the case of *San Francisco Newspaper Printing Co. v. United States*, — CIT —, 620 F.Supp. 738 (1985). In *San Francisco*, the defendant moved to sever and dismiss part of the plaintiff's action because it was commenced beyond the 180 day limitation. The plaintiff, in that case, argued Customs had rescinded the denial of the protest and therefore was estopped from asserting a timeliness defense. The Court identified the question of that case as whether or not "Customs may rescind the denial of a protest after it has been mailed." *Id.* — CIT at —, 620 F.Supp. at 740.

The *San Francisco* court and this Court are presented with different circumstances

surrounding a similar, but not identical, issue and thus the two cases are distinguishable. In *San Francisco*, Customs did not notify the plaintiff of a second denial of the protest. Plaintiff's attorney produced his affidavit averring he discussed the petition with a Customs official who said the protest *could be* rescinded. It was further averred the denial was rescinded on or before October 6, 1980, and no action was commenced due to the reliance on the rescission.

The instant case, on the other hand, involves an error by Customs in computing the 90 days limitation plaintiff had in filing its protest after the liquidation. Customs originally communicated a denial of plaintiff's Protest No. 83–2–001477 on October 14, 1982, as untimely. Upon closer scrutiny, Customs realized it had incorrectly calculated the 90 days and therefore communicated a denial of a timely filed protest as untimely. Customs conveyed to plaintiff the rescission of the denial, reviewed the protest, denied the protest, and subsequently notified plaintiff of its second notice of denial on June 7, 1983. The issue before this Court expands the *San Francisco* issue to include the question of which protest denial communication should start the running of the 180 day limitation within which to commence this action. In the instant action, it was the June 7, 1983 protest denial.

■ Of paramount importance in distinguishing the two cases is recognizing the *San Francisco* fact pattern contained the mailing of a first denial notice to the plaintiffs; whereas the instant circumstances do not. Neither defendant nor plaintiff submit to this Court any proof showing a *written* notice, of the October 14, 1982 decision to deny the protest, was mailed. Also important to note is the *San Francisco* fact pattern did not contain Customs' notification to the plaintiff of a second protest denial; the instant circumstances do. Customs transmitted a denial of Protest No. 3801–2–001477 as untimely on October 14, 1982. Having recognized the untimeliness error, Customs rescinded the denial, notified plaintiff of this decision, and finally denied the protest on June 7, 1983.

Section 2636(a)(1) firmly establishes "[a] civil action contesting the denial ... of a protest under section 515 ... is barred unless commenced ... within one hundred and eighty days after *the date of mailing* of notice of denial of a protest...." 28 U.S.C. 2636(a)(1)(1982) (emphasis added). The statute requires the *mailing* of the notice in order to begin the counting of the one hundred and eighty day limitation.

This Court, having determined Customs, in this case, did not mail out a written notice of a protest denial on October 14, 1982; and having further determined the defendant's answer to the complaint clearly admits June 7, 1983 is the date the District Director of Customs denied the plaintiff's Protest No. 3801–2–001477 pertaining to entry 81–579576, holds plaintiff filed its action within the statutory framework. This Court does have jurisdiction to hear those matters still surviving in the action concerning entry 81–579576.

The final issue before this Court is whether or not a valid claim exists under § 520(c). Plaintiff, in its motion for summary judgment, contends its depreciation information submitted to Customs, with the invoices, explaining plaintiff's valuation of the merchandise was overlooked by Customs, was not taken into consideration in Customs' valuation of the merchandise, and therefore constituted a mistake or error provided for in § 520(c).

Defendant denies Customs overlooked this information and maintains Customs was aware of and considered plaintiff's information, but ultimately rejected plaintiff's information in favor of its own valuation procedure.

Defendant counters plaintiff's summary judgment argument with its own summary judgment motion arguing plaintiff has failed to satisfy the requirements of § 520(c) and thus has not established a claim upon which relief can be granted.

■ A valid claim under § 520(c) must establish the following: (1) the existence of a clerical error, mistake of fact, or other

inadvertence not amounting to an error in the construction of a law; (2) an adverse effect to the importer due to the error; (3) a manifestation of the error in the record; and (4) a showing that the error was brought to the attention of the appropriate Customs officer within one year after the date of the liquidation. 19 U.S.C. § 1520(c).

█ Plaintiff's first contention is Customs overlooked and, therefore, was unaware of the depreciation schedules submitted. This argument is without merit as evidenced by plaintiff's memorandum in support of the protests, which was submitted to Customs. The following is a passage from the memorandum:

The staff of Chrysler's Customs Department immediately researched the supplier records for the tool purchase orders and amendments and for part production records. From these records a schedule was developed that itemized all the purchase order amendments and production information in order to properly document depreciation of the tooling. This method of depreciation has been agreed to by Customs for Chrysler Corporation's annual foreign tooling report and is in accordance with generally accepted accounting procedures. A copy of the schedule is included in this protest and has been labeled Exhibit B.

On October 24 the broker made a phone call to the Import Specialist to apprise him of the facts; namely, that the values shown on Houdaille's customs documents were erroneous, that the tooling was used, and to confer about making entry based on the depreciated values. The Import Specialist verbally indicated that he would not accept an entry if Chrysler's schedule was used. A phone call was then made to the Supervisory Import Specialist, who agreed that entry could be made using the values developed by Chrysler. The entry summary was submitted with a copy of the valuation and depreciation schedule and a copy of the original tool purchase order and all subsequent amendments to the purchase order.

Defendant's Memorandum in Support of Defendant's Motion For Dismissal and/or For Summary Judgment, *Chrysler Corp. v. United States*, Court No. 83–10–01538, Defendant's Exhibit L, p. 1. It is clear from plaintiff's own admission plaintiff's method of depreciation was agreed to by Customs for acceptance but the Import Specialist would not accept plaintiff's values if the depreciation schedule was used. This portion of the record also establishes Customs, via its Import Specialist, affirmatively decided not to accept the values submitted using the plaintiff's depreciation schedule. Further, the Import Specialist's deposition establishes the method chosen by Customs to depreciate the used merchandise has been the standard operating procedure utilized in valuation of similar merchandise imported by other major domestic car manufacturing companies. *Id.* at Defendant's Exhibit O, pp. 14–15. The record does not support plaintiff's contention an error, mistake, or inadvertence occurred because Customs overlooked or did not take into account plaintiff's submitted depreciation information. Plaintiff's motion for summary judgment is denied.

Defendant's cross-motion for dismissal and/or summary judgment, stating plaintiff has not set forth a valid claim under § 520(c), contains the argument no clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law exists. This is the gravamen of a claim under § 520(c). Customs' decision, defendant continues, to disregard plaintiff's depreciation information, if found to be an error, was not an error of fact but of law and therefore does not fall within the purview of § 520(c).

Plaintiff opposes defendant's conclusion and states "the determination of the appraised value in question is *normally* factual." Plaintiff's Response in Opposition to Defendant's Motion for Dismissal and/or Summary Judgment, *Chrysler Corp. v. United States*, Court No. 83–10–01538, p. 4 (emphasis added). Plaintiff bolsters this conclusion with reference to *Lester Engineering Company v. United States*, 3 CIT 236 (1982).

In *Lester*, the Court held "[a]ppraisement on the basis of constructed value involves a complex compilation and analysis of many facts covering various costs, expenses and profits, and such factual determinations certainly are susceptible to clerical errors, mistakes or other inadvertences not amounting to an error in the construction of the law." *Id.* at 240. This holding addressed the defendant's assertion: "an appraising official utilizing constructed value merely construes the law and does not deal with facts." *Id.* The issue addressed in *Lester* involved the accuracy of computations used to determine the value of depreciated machinery. This is clearly distinguishable from the facts before this Court which involve the choice of what or whose method to employ in the valuation of depreciated machinery.

The alleged "mistakes" or "errors", which plaintiff challenges here, are interpretational and discretionary decisions of the Customs' Import Specialist; these are "mistakes" or "errors" not intended to be alleviated by § 520(c). *See Hambro Automotive Corp. v. United States*, 81 Cust.Ct. 29, C.D. 4761, 458 F.Supp. 1220 (1978), *aff'd*, 66 CCPA 113, C.A.D. 1231, 603 F.2d 850 (1979).

The Court of Customs and Patent Appeals set forth the premiere distinctions among mistake of fact, mistake of law, and inadvertence:

A mistake of fact is any mistake except a mistake of law. * * * It has been defined as a mistake which takes place when some fact which indeed exists is unknown, or a fact which is thought to exist, in reality does not exist. * * * Pomeroy, Equity Jurisprudence section 839 (1941). A 'mistake of fact exists where a person understands the facts to be other than they are, whereas *a mistake of law exists where a person knows the facts as they really are but has a mistaken belief as to the legal consequences of those facts.*' 58 C.J.S. Mistake section [page] 832.

Inadvertence, on the other hand, is a word of broad meaning. * * * It has been defined variously as an oversight or involuntary accident, or the result of inattention or carelessness, and even as a type of mistake. 42 C.J.S. Inadvertence section [page] 495. It is thus language broader in scope than mistake. [*C.J. Tower & Sons of Buffalo, Inc. v. United States*, 68 Cust.Ct. 17, 22, C.D. 4327, 336 F.Supp. 1395, 1399 (1972), *aff'd*, 61 CCPA 90, C.A.D. 1129, 499 F.2d 1277 (1974) (citations omitted).]

*Hambro Automotive*, 66 CCPA at 118, 603 F.2d at 853–54.

The Treasury Department has also set forth interpretations of these terms:

*Mistake of fact* occurs when a person believes the facts to be other than they really are and takes some action based on that erroneous belief. The reason for the belief may be that a fact exists but is unknown to the person or he may be convinced that something is a fact when in reality it is not. For example, an importer's agent may be convinced that the importer wishes him to make a consumption entry for goods and he does so. The true fact is that the importer desired an in-bond entry to be made in the particular case. If the true facts had been known to the agent, an in-bond entry would have been filed.

\* \* \* \* \* \*

*Error in the construction of a law* occurs when a person knows the true facts of a case but has a mistaken belief of the legal consequences of those facts and acts on that mistaken belief. For example, the exact physical properties of certain merchandise and all other pertinent facts for classification of that merchandise are known. In applying the law the merchandise is classified as an entirety but it should have been classified as separate articles. Or the claim is made that an appraiser acted on incomplete information but the appraiser concludes he would have acted in the same way even if the missing information had been before him. If the appraiser errs in such a case, he commits error of law.

94 Treas.Dec. 244, 245–46, T.D. 54848 (1959).

As it stands, Customs' decision to reject plaintiff's depreciated values for Customs' determined depreciated values of the used merchandise could constitute an alleged "mistake" of law, but could not constitute a mistake or error under which relief may be provided pursuant to § 520(c). Plaintiff has failed to state a valid claim under § 520(c) for which relief may be granted.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is denied, and defendant's cross-motion to sever and dismiss and to dismiss for failure to state a claim and for lack of jurisdiction is granted.