**GODCHAUX–HENDERSON SUGAR CO., INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Court No. 77-2-00257.
C.D. 4874.

United States Customs Court.

Sept. 19, 1980.

Lord, Day & Lord, New York City (Peter J. McKenna, New York City, of counsel), for plaintiff.

Alice Daniel, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Field Office for Customs Litigation, Washington, D. C., and James A. Resti, Trial Atty., New York City, for defendant.

NEWMAN, Judge:

We have heard repeatedly that "truth is stranger than fiction". But is it? Here, the inquiry does not end with that saying—it only begins.

In this action, plaintiff seeks reliquidation of its entry of March 9, 1976 pursuant to section 520(c)(1) of the Tariff Act of 1930, as amended (19 U.S.C. § 1520(c)(1)) (hereinafter section 520(c)(1)). That section reads:

(c) Reliquidation of entry

Notwithstanding a valid protest was not filed, the appropriate customs officer may, in accordance with regulations prescribed by the Secretary, reliquidate an entry to correct—

(1) a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the customs service within one year after the date of entry, or transaction, or within ninety days after liquidation or exaction when the liquidation or exaction is made more than nine months after the date of the entry, or transaction; * * *.

The pertinent facts in this unusual case may be summarized as follows: [1]

[1]. The record comprises the testimony of two witnesses each for plaintiff and for defendant. Additionally, both parties submitted documentary exhibits; and the official entry papers were admitted in evidence as an unnumbered exhibit. Plaintiff's witnesses were: Al Hampton, who at the time of importation of the subject merchandise was assistant to the raw sugar buyer and plaintiff's treasurer, but at the time of trial was no longer employed by plaintiff; and Margaret McAuliffe, Secretary–Treasurer of Philbin, Cazalas & St. John, Inc., plaintiff's customhouse broker. Defendant's witnesses were: Joanne Cornelison, Acting Director of Classification and Value for Customs at the port of New Orleans, who at the time of entry of the merchandise was Supervisory Import Specialist; and Robert Abramson, Acting Assistant Regional Commissioner for Administration, who at the time of entry was Director of Classification and Value at the port of New Orleans.

On February 24, 1976, plaintiff imported from Nicaragua 9,239,546 pounds of raw cane sugar, which were unladen at the port of New Orleans under an Immediate Delivery Permit. Under such permit, plaintiff was allowed to import the sugar cane without filing a consumption entry for ten business days after release of the merchandise, in this case until March 9, 1976.[2]

As part of the Trade Act of 1974, Title V, §§ 501, et seq. (19 U.S.C. §§ 2461, et seq.), Congress enacted the "Generalized System of Preferences" (GSP), whereby the President was granted authority to extend duty–free treatment to eligible articles from any beneficiary developing country designated by him. The GSP permits the President to withdraw, suspend or limit the application of duty–free treatment with respect to any article or any country. By Executive Order 11888, dated November 24, 1975, the GSP was made operative as of January 1, 1976, 40 FR 55275, T.D. 75–304 (1975). Among many articles designated for duty–free treatment was Nicaraguan sugar, the subject merchandise. The list of eligible articles and beneficiary developing countries has been amended from time to time by Presidential Executive Order, and these changes have been made effective as of the date the merchandise is entered, or withdrawn from the warehouse, for consumption. As pointed out in Sturm, *Customs Law and Administration* (1980), p. 731: "This causes difficulties since the annual changes required by the competitive need requirements of the statute are usually made on very short notice". The author's prescient observation as we shall see here, concerns a change most certainly "made on very short notice".

From January 1, 1976 (date of implementation of the GSP) through February 28, 1976, the subject merchandise was eligible for duty–free treatment under the GSP. On February 26, 1976, the President proclaimed by Executive Order 11906 certain modifications in the GSP, which involved changes in specific country eligibility for duty–free preferential treatment for numerous products. The Executive Order signed by the President to implement the changes in the GSP was published in the Federal Register on February 27, 1976 (41 FR 8758) and was made applicable with respect to articles entered, or withdrawn from warehouse, for consumption on or after the effective date of February 29, 1976. Thus, Executive Order 11906 was dated on a Thursday, published in the Federal Register on Friday, and became effective on Sunday.[3] Special arrangements were available for entries at night and on Saturday. Hence, in view of the short period of time from the notice of the President's Executive Order eliminating a commodity or country from the GSP and the effective date of such order, it is readily understandable how an importer could fail to meet a deadline for filing a duty–free entry.

The evidence in this case establishes that the importation was purchased from Amerop Corporation, and that the seller sent plaintiff a telex on February 13, 1976 advising, *inter alia*, that the shipment would be eligible for duty–free entry. As mentioned, *supra*, the shipment arrived at the port of New Orleans on February 24, 1976, and instead of being entered for consumption, plaintiff utilized an Immediate Delivery Permit. Both plaintiff and its customhouse broker, Philbin, Cazalas & St. John, Inc. (Philbin), were cognizant at the time of importation that the subject merchandise originated in and was exported from Nicaragua. Moreover, Margaret McAuliffe, who was a licensed customhouse broker and

---

2. See 19 C.F.R. §§ 142, et seq., which set forth the requirements and procedures relative to special permits for immediate delivery of merchandise *prior to entry*, as authorized by section 448(b), Tariff Act of 1930, as amended (19 U.S.C. § 1448(b)).

3. See Sturm, *supra*, p. 731, for other instances in which there similarly were changes in eligible articles and countries on very short notice. At the trial, defendant's witness Cornelison testified that at the port of New Orleans, notices of changes in the GSP were received "a maximum of a day or two before the effective date, so these [notices to brokers and importers] are disseminated in a great rush" (R. 221).

responsible for plaintiff's account at Philbin, was aware that Nicaragua was one of the countries receiving duty–free treatment under the GSP. Nevertheless, it appears that at the time of importation neither McAuliffe nor Al Hampton, who was responsible in plaintiff's company for matters pertaining to the importation of sugar and the payment of duties for plaintiff, was aware that the subject shipment was then entitled to duty–free entry. The evidence shows that Hampton was not aware of the specific countries which qualified for GSP treatment, and further, that Hampton overlooked the specific advice in Amerop's telex of February 13, 1976 that the shipment would be duty free. Significantly, on February 26, 1976, Hampton arranged for and had a check drawn for the payment of duties and forwarded such check to Philbin, which Philbin received on February 27, 1976. McAuliffe relied upon this check as an indication that the shipment was duty payable.

The evidence further shows that McAuliffe received a telephone call on February 26, 1976 from a Miss Bennett, an import specialist with Customs at New Orleans. Bennett informed McAuliffe that certain countries (which, according to McAuliffe, were not specifically identified) were to be eliminated from the GSP program; and more, Bennett urged McAuliffe to immediately enter any eligible sugar shipments.[4] Unfortunately, and for whatever reason, McAuliffe then labored under the false impression that the subject importation was not eligible for duty–free treatment.

On March 3, 1976, Hampton received a telephone call from Amerop, and thereupon discovered that a discrepancy in the pricing of the sugar was due to the fact that the seller made no deduction for duty from the price initially quoted. It was at this point in time that Hampton first became aware that the subject shipment qualified for duty–free entry under the GSP. Hampton then telephoned Customs on the same date (March 3rd) and learned through Bennett that the duty–free status of Nicaraguan sugar had terminated on February 29, 1976.[5] Nevertheless, on March 4, 1976, Hampton telephoned McAuliffe at Philbin and instructed her to enter the merchandise duty free and return the check sent for payment of duties. On that same date, Philbin attempted to file a duty–free entry with Customs, but such entry was rejected for the reason that Niacaraguan sugar was no longer entitled to duty–free entry by virtue of the President's Executive Order. On March 9, 1976, the merchandise was entered as dutiable and was liquidated accordingly on May 14, 1976.[6]

As mentioned at the outset, this action is predicated upon section 520(c)(1). The gravamen of the action is that plaintiff failed to enter its shipment duty free under the GSP before the effective date of Executive Order 11906 due to "clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law" within the meaning of section 520(c)(1), and therefore Customs erred in refusing to reliquidate the entry duty free pursuant to that section.

Defendant maintains that the record as a whole shows that there was no mistake or inadvertence by plaintiff in not filing an entry by February 29, 1976;[7] and that even accepting as true the evidence most favorable to plaintiff, the failure to enter the merchandise prior to February 29th was

---

4. Bennett died in December 1977, and the consequent inability of the Court to observe her demeanor, and for the parties to examine and cross–examine her concerning the information she furnished to McAuliffe created a complicating factor for the Court and counsel.

5. Hampton also received written notice from Customs by mail on March 4, 1976 respecting Executive Order 11906. Additionally, he received a copy of the order from Philbin on the

same date. Philbin received notice of the order in its box at the customhouse.

6. Plaintiff was assessed duty in the amount of $59,199.06.

7. Defendant's position, in essence, is that plaintiff failed to enter the subject merchandise prior to February 29, 1976, knowing that prior to that date the merchandise had a duty–free status under the GSP.

due to plaintiff's erroneous legal conclusion that the merchandise did not qualify for duty–free treatment under the GSP rather than ignorance of facts. Further, defendant insists that the presumption of correctness attaching to Customs' refusal to reliquidate the entry under section 520(c)(1) has not been overcome by plaintiff.

Respecting the factual issue raised by defendant as to whether plaintiff's unfortunate predicament was due to mistake or inadvertence, I must in all candor state that the facts urged by each of the parties appear somewhat anomalous, indeed almost incredible. Further, I must confess that much of the testimony of the witnesses strains credulity and brooks reality. It would not be unfair to state that the record in this case is like a jigsaw puzzle with many missing parts, and it is difficult to discern what the completed puzzle is intended to depict. Consequently, it would be a simple matter to find that for lack of veracity of its evidence, plaintiff has failed to sustain its burden of proof. However, I am not inclined to that easy approach because at the trial of this case in New Orleans on December 6th and 7th, 1979, I was impressed by the ostensibly sincere and honest endeavor of all the witnesses, both plaintiff's and defendant's, to recall, as best as they could, the confluence of elusive events that occurred more than three years prior thereto in February 1976.

The evidence viewed most favorably to plaintiff establishes that plaintiff's failure to file a consumption entry for the subject merchandise prior to February 29, 1976 was due to plaintiff's (and its broker's) ignorance of the duty–free status of the merchandise under the GSP. The core issue is whether section 520(c)(1) is remedial under these circumstances.

Viewed dispassionately, the record precludes any determination but one–that plaintiff has failed to sustain the requisite burden.

■ Even assuming *arguendo* that the duty–free status of the merchandise under the GSP does not involve "construction of a law", which is excluded from relief under section 520(c)(1),[8] I have concluded that plaintiff's failure to file a duty–free entry by the deadline prescribed by the Executive Order is not within the scope of that section.

■ By the express terms of section 520(c)(1), plaintiff had the burden of establishing "a clerical error, mistake of fact, or other inadvertence * * * *in [an] entry, liquidation, or other customs transaction* * * *". (Emphasis added.) *Geo. Wm. Rueff, Inc. v. United States*, 41 Cust.Ct. 331, 334, Abs. 62204 (1958). The legislative history of section 520(c)(1), relied upon by plaintiff,[9] demonstrates that Congress intended the statute to eliminate injustice resulting from certain errors, mistakes and inadvertences in an entry, liquidation, and other customs transaction. However, I see nothing in either section 520(c)(1) or the legislative history cited by plaintiff which suggests that Congress intended the statute to be remedial in situations where, as here, the importer mistakenly or inadvertently *failed to make an entry* within the time limit prescribed by law to obtain duty–free treatment. In the present case, the merchandise was not entered until March 9, 1976, on which date the merchandise concededly was no longer eligible for duty–free treatment. Consequently, in plaintiff's dutiable entry on March 9, 1976 there was no mistake or inadvertence. Simply put, plaintiff's "mistake" or "inadvertence" was not in an *entry*, but rather in *failing to make an entry* prior to February 29, 1976.

---

**8.** For the distinction between "mistake of law" and "mistake of fact" under section 520(c)(1) see *Hambro Automotive Corporation v. United States*, 66 CCPA ——, C.A.D. 1231, 603 F.2d 850 (1979). *Cf. International Forwarding Co. v. United States*, 9 Cust.Ct. 428, Abs. 47630 (1942) (importer failed to file document for tax exemption due to ignorance of the law).

**9.** *Simplification of Customs Administration: Hearings on H.R. 1535 before the House Comm. on Ways and Means*, 82 Cong., 1st Sess. 42 (1951); S.Rep.No.632, 83rd Cong., 1st Sess., *reprinted in* (1953) *U.S. Code Cong. & Admin.News*, p. 2283.

Section 520(c)(1) is not remedial for *every* conceivable form of mistake or inadvertence adverse to an importer, but rather the statute offers "limited relief in the situations defined therein". *Phillips Petroleum Company v. United States*, 54 CCPA 7, 11, C.A.D. 893 (1966). I cannot disregard the cut–off date for duty–free entry established by Executive Order 11906 simply on the tenuous basis that plaintiff mistakenly assumed that the merchandise did not qualify for GSP treatment.

In support of its position, plaintiff cites *C. J. Tower & Sons of Buffalo v. United States*, 68 Cust.Ct. 17, C.D. 4327, 336 F.Supp. 1395 (1972), *aff'd.*, 61 CCPA 90, C.A.D. 1129, 499 F.2d 1277 (1974). There, the importer was unaware at the time of entry that the shipment at issue comprised emergency war material entitled to duty–free entry. The importation was entered as dutiable, and was liquidated accordingly. Central to the issue presented was the construction of section 520(c)(1). Judge Ford found that the importer's lack of knowledge of the facts justifying duty–free entry clearly came within the statutory language, "mistake of fact, or other inadvertence", and sustained plaintiff's claim that the entry should have been reliquidated pursuant to section 520(c)(1). On appeal, Judge Rich, writing for the Court of Customs and Patent Appeals, affirmed.

But the present case is clearly distinguishable from *Tower*. In *Tower*, the merchandise was duty free *at the time of entry*, but through mistake of fact was entered as dutiable. Here, at the date of entry (March 9, 1976) the merchandise was properly dutiable since it no longer qualified for duty–free treatment under the GSP. Hence, in the present case there was no mistake of fact or inadvertence in the *entry filed on March 9, 1976*. The admittedly duty–free status of the Nicaraguan sugar prior to February 29, 1976 does not establish any mistake of fact or inadvertence in the dutiable entry of March 9, 1976.[10] There is no dispute that had the merchandise herein been entered prior to February 29, 1976, it would have been eligible for duty–free entry under the GSP.[11] Following the rationale of *Tower*, it would appear that if through mistake of fact or inadvertence the Nicaraguan sugar had been entered as dutiable *prior to February 29, 1976* and liquidated accordingly, the entry could be reliquidated duty–free pursuant to section 520(c)(1).[12] Since the merchandise herein was not duty–free on the date of entry, *Tower* is inapposite.

While I sympathize with plaintiff's unhappy predicament in this case, and the short notice given by Customs of the changes in the GSP has not been lost on the Court, I am constrained to hold that the scope of relief afforded by section 520(c)(1) is not addressed to the facts and circumstances disclosed by the record.

Finally, it is appropriate to record the professional manner in which all counsel conducted themselves at the trial. Plaintiff's attorney faced an obviously difficult situation; defendant's attorneys responded effectively. The demeanor and efforts of all counsel do credit to our profession.

The action is dismissed. Judgment will be entered accordingly.

---

10. In its briefs, plaintiff's counsel repeatedly states that the merchandise was "entered" on February 24, 1976, thus confusing the date of importation with the date of entry. However, plaintiff's counsel recognizes that the merchandise was not "formally" entered until March 9, 1976. Although, as pointed out by plaintiff (brief, at 6) the merchandise was duty free "at the time of importation", changes in eligible articles and countries under the GSP are effective as of the date of entry. See Sturm, p. 731.

11. Both plaintiff's witness McAuliffe and defendant's witness Abramson agreed that, if the documents proffered on March 9, 1976 had been submitted by plaintiff before February 29, 1976, the merchandise would have qualified for duty–free treatment under the GSP (R. 143, 299–300).

12. This assumes, of course, that the documents required for duty free entry are submitted.