896 F. Supp. 1235

EXECUTONE INFORMATION SYSTEMS, PLAINTIFF *v.*
UNITED STATES, DEFENDANT

Court No. 94–06–00313

(Dated July 19, 1995)

*Law Offices of Michael P. Maxwell (Michael P. Maxwell* and *Edith Sanchez Shea)* for plaintiff.

*Frank W. Hunger,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Barbara Silver Williams), Beth C. Brotman,* General Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of counsel, for defendant.

## Opinion

RESTANI, *Judge:* This action is before the court on cross-motions for summary judgment pursuant to USCIT Rule 56. Plaintiff Executone Information Systems ("Executone") challenges the United States Customs Service's ("Customs") denial of reliquidation of two entries pursuant to 19 U.S.C. § 1520(c)(1) (1988).[1] Customs classified the entries under Item 8517.10.00 of the Harmonized Tariff Schedule of the United States, USITC Pub. 2333, sec. XVI, ch. 85, at 16 (Supp. 1991) [hereinafter "HTSUS"]. Customs assessed an *ad valorem* duty rate and liquidated the entries for additional monies after Executone failed to furnish the necessary documentation (Form A's) to support special tariff treatment for the merchandise.[2] Executone contends that reliquidation of its merchandise is appropriate, as the failure to provide the necessary documentation was due to inadvertence on the part of its Customs broker, Radix Group International ("Radix"). For the following reasons, Executone's motion for summary judgment is denied and defendant's cross motion is granted.

## Factual Background

This action arises from two entries of telephone handsets, Entry Nos. 336–1795821–1 and 336–1795902–9, that were imported from the Dominican Republic by Executone under Item 8517.10.00, HTSUS, with the rate of duty symbol, E, denoting duty-free entry of the merchandise. The entries were made on October 23 and November 4, 1991. Entry papers filed with the merchandise, however, did not include the necessary Form A's nor any substitute documentation needed to support Executone's claim for special tariff treatment under the CBERA.

On December 4 and December 10, 1991, Customs issued notices informing Executone that the necessary documentation to support duty-free entry of its merchandise was missing. The notices also indicated that the entries were in the process of being liquidated under Item 8517.10.00, HTSUS, at an *ad valorem* duty rate. As Executone failed to provide the necessary Form A's or to seek an extension of time for liquidation, Customs denied Executone's claim for special tariff treatment and liquidated the entries with duty advances on December 20 and December 27, 1991. Upon learning of the duty advances, Executone had its supplier in the Dominican Republic transmit Form A's by facsimile to Radix. Executone then instructed Radix to file the facsimile Form A's in support of its claim for duty-free treatment. Radix, however, did not file

---

[1] The relevant statutory provision provides:

Notwithstanding a valid protest was not filed, [Customs] may * * * reliquidate an entry * * * to correct—
(1) a clerical error, mistake of fact, or other inadvertence * * * not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of [Customs] within one year after the date of liquidation or exaction.

19 U.S.C. § 1520(c)(1).

[2] Upon entry, Executone classified its merchandise eligible for special tariff treatment under the designation symbol, E. This designation symbol represents the Caribbean Basin Economic Recovery Act ("CBERA"), which permits duty-free entry of certain merchandise from, *inter alia,* the Dominican Republic. HTSUS, Gen. Note 3(c)(i)(A) at 2, (v)(A)–(C) at 9–10.

the facsimile Form A's as instructed and it appears the forms were not correct or in an acceptable form. Executone paid the additional duties on January 6, 1992.

Executone instructed Radix to prepare a formal protest on its behalf accompanied by the facsimile Form A's on February 3, 1992. The protest was not filed with Customs and on February 17 and March 3, 1992, Executone again communicated with Radix by facsimile and requested that a formal protest be filed. In June 1992, Executone finally received a set of new Form A's for the entries, containing different information,[3] which were forwarded to Radix. On July 14, 1992, Radix filed the new Form A's with Customs with requests to reliquidate the subject entries pursuant to 19 U.S.C. § 1520(c)(1), as the 90-day protest period, under 19 U.S.C. § 1514 (1988)[4], had elapsed. Customs subsequently denied Executone's request for reliquidation. This action for summary judgment followed after Customs' denial of Executone's protest of the initial denial to reliquidate.

## STANDARD OF REVIEW

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. USCIT Rule 56(d).

## DISCUSSION

Executone contests Customs' denial to reliquidate two entries of telephone handsets under 19 U.S.C. § 1520(c)(1). Executone asserts that the entries were eligible for special tariff treatment pursuant to the CBERA, and but for the inadvertence of Radix in failing to submit the necessary Form A's upon receipt of Customs' notices, the subject merchandise was entitled to duty-free entry. According to Executone, as no issue of law is implicated by Radix's inadvertent failure to file the Form A's, Customs erred in refusing to reliquidate its entries.

Defendant counters that as a result of Executone's failure to file the applicable Form A's, Customs made a legal determination as to the classification of the merchandise based upon all of the information submitted with the entries. Defendant argues that relevant statutory provisions and court precedent establish that determinations by Customs as to the classification of merchandise are final and conclusive upon all persons unless a protest is filed within 90 days from the date of liquidation. *See supra* note 4; *see also Occidental Oil & Gas Co. v. United*

---

[3] According to defendant, certain information in the Form A's provided to Executone in June 1992 [hereinafter "Form A2"] did not match the information in the initial facsimile Form A's. For example, the Form A2 for Entry No. 336–1795902–9, compared to the corresponding facsimile Form A, contained either a different shipment weight or quantity. Pl.'s Mem. in Supp. Mot. Summ. J., Exs. C, F. Similarly, the Form A2 for Entry No. 336–1795821–1 contained three additional product models than were found in the corresponding facsimile Form A. *Id.*

[4] Pursuant to 19 U.S.C. § 1514, the liquidation of an entry

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed * * * within ninety days after * * * notice of liquidation.

19 U.S.C. § 1514(a), (c)(3)(A) (1988).

*States,* 13 CIT 244, 249 (1989). In *Occidental,* an importer had failed to provide documentation entitling certain merchandise to duty-free treatment as "American goods returned." *Id.* at 245. The court determined that Customs' classification of the merchandise on the basis of documentation before it was a conclusion of law. *Id.* at 248, 249; *accord AT&T Int'l v. United States,* 861 F. Supp. 95, 99–100 (Ct. Int'l Trade 1994); *Cavazos v. United States,* 9 CIT 628, 631 (1985). Absent the limited exceptions of 19 U.S.C. § 1520(c)(1), conclusions of law by Customs as to the classification of merchandise cannot be challenged beyond the initial 90-day protest period. *ITT Corp. v. United States,* 24 F.3d 1384, 1387 n.4 (Fed. Cir. 1994).

Executone agrees with defendant, in that, had this case entailed a classification dispute, the legal tariff description of the merchandise would plainly involve a conclusion of law. Pl.'s Mem. in Opp'n to Def.'s Cross-Mot. Summ. J. at 4. Executone claims, however, that this case does not involve a classification dispute, but instead a dispute over the applicable rate of duty arising from its failure to submit the necessary Form A's. *See id.* at 4–5. One issue before the court then is whether or not a determination as to the rate of duty to be assessed by Customs on certain merchandise is to be considered a classification of such merchandise.

When Customs engages in the process of classifying imported merchandise, reference is made to the HTSUS, a detailed goods nomenclature. The HTSUS is divided into many parts, one of which, the General Rules of Interpretation, guides in the classification of merchandise. Rule 1 specifically provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." HTSUS, Gen. Rule of Interpretation 1, at 31.

A "Heading" refers to the article descriptions and tariff provisions appearing in the schedule at the first hierarchical level. *Id.,* Gen. Note 7(f), at 29. A Heading reference also encompasses Subheadings,[5] with their corresponding article descriptions and tariff provisions. *Id.* In addition to the "Heading/Subheading" number and corresponding "Article Description" column, further reference is made to the corresponding "Rates of Duty" column that is composed of sub-columns numbered one[6] and two.

Hence, the classification of an item within a Heading or Subheading encompasses more than just the Heading or Subheading number and corresponding article description. Customs must examine the many

---

[5] Under the HTSUS, "the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis,* to the [other HTSUS] rules, on the understanding that only subheadings at the same level are comparable." HTSUS, Gen. Rule of Interpretation 6, at 31. "For the purposes of this rule, the relative section, chapter and subchapter notes also apply, unless the context otherwise requires." *Id.*

[6] Sub-column one is further divided into the sub-columns designated "General" and "Special." The "General" sub-column sets forth the general most-favored-nation (MFN) duty rates applicable to products of those countries that are not entitled to special tariff treatment under one or more tariff treatment programs. HTSUS, Gen. Note 3(a)(ii), at 1. The "Special" sub-column sets forth duty rates arising under one or more special tariff treatment programs listed in the General Notes. *Id.,* Gen. Note 3(a)(iii), at 1. Letter designations of the various tariff treatment programs eligible for certain merchandise are identified in parentheses immediately following the duty rate specified in the sub-column. *Id.*

relevant provisions and notes in the tariff schedule, and classify the merchandise at issue accordingly. In addition, a classification will involve reference to the applicable rate of duty attached by law to articles of particular Headings or Subheadings. Thus, the court finds that the classification process involves placing the subject merchandise under the appropriate article description and determining the relevant rate of duty.

In the present case, as Executone failed to provide the necessary Form A's or any other proof of origin, Customs removed the merchandise from the "Special" rate of duty sub-column, as originally entered, and placed it within the "General" sub-column, assessing an *ad valorem* duty rate. Customs' determination to categorize the merchandise within the "General" sub-column and remove special treatment, amounted to a classification of such merchandise as dutiable instead of duty-free. Customs consequently made a correct "legal determination as to the classification of the merchandise on the basis of the facts presented, and in light of [Executone's] claimed classification." *See Cavazos,* 9 CIT at 631.

The next issue is whether Customs' apparently correct legal classification itself resulted from a mistake of fact or inadvertence for which relief should be provided under 19 U.S.C. § 1520(c)(1). In this regard, missing documentation cases present special problems. Executone asserts that this case is analogous to *George Weintraub & Sons, Inc. v. United States,* 12 CIT 643, 691 F. Supp. 1449 (1988), *vacated as moot,* 855 F. Supp. 401 (Ct. Int'l Trade 1994),[7] in which a Presidential proclamation entitled an importer's merchandise to duty-free entry, if imported pursuant to a contract entered into before October 9, 1982. 12 CIT at 643, 691 F. Supp. at 1450. There the importer's failure to submit proof of its October 8, 1982 contract resulted in the assessment of a higher rate of duty on its merchandise. *Id.* at 644, 691 F. Supp. at 1451. Although Customs admitted the merchandise would have been entitled to duty-free treatment had the proper documentation been presented timely, Customs denied the importer's reliquidation request. *Id.,* 691 F. Supp. at 1451. In determining whether a mistake of fact or inadvertence occurred in the classification of the merchandise, the court reasoned that, "[i]f, as is the case, the goods were entitled to entry under [a lower duty rate], whether this fact was known to Customs or not, and they were in fact liquidated under [a higher duty rate], then it must follow that there was a mistake of fact." *Id.* at 645, 691 F. Supp. at 1451.

The court does not find *Weintraub* to be persuasive in this regard.[8] In concluding that a mistake of fact, or inadvertence, had been committed, the court in *Weintraub* dismissed the fact that Customs made its duty rate assessment without the documentary evidence of the contract, reasoning that Customs "was clearly on notice of the change in status of

---

[7] The court's order vacating its earlier decision was originally entered as an unpublished order on August 22, 1989. *Weintraub,* 855 F Supp. at 401 n.*.

[8] As the judgment in *Weintraub* was vacated and set aside, it is of limited precedential value. *See Weintraub,* 855 F. Supp. at 401.

many Polish imports." *Id.,* 691 F. Supp. at 1451. First, much of the opinion is flavored by the court's concerns as to delays by Customs that may have prejudiced plaintiff. Second, although notice should not be the cutting issue, here at the time of liquidation, or within 90 days thereof, Customs was not on notice that valid proof of origin existed. In fact, given the fact pattern here, the court is in doubt today as to what type of inadvertence might be claimed. That is, it appears that appropriate documentation of origin did not exist at the time of entry and the Customs broker may have purposely decided not to file defective documentation.[9] Potential issues of fact as to the broker's state of mind or the degree of defect in the documentation, however, do not prevent summary judgment here, as the facts as set forth by plaintiff lead to only one legal conclusion.

Nonetheless, the court cannot simply apply the reasoning of *Cavazos* or *Occidental,* or find that the errors in proof before Customs obviate applicability of 19 U.S.C. § 1520(c)(1). The Federal Circuit's decision in *ITT Corp.,* has intervened. In that case, the Federal Circuit effectively eliminated the requirement of § 1520(c)(1) that the alleged mistake of fact be manifest in the record before Customs. *See* 24 F.3d at 1389.[10] The result is that the CIT is to determine *de novo* whether a mistake has been made, as opposed to determining *de novo* whether all the requirements of § 1520 have been met.[11] To carry the reasoning of *ITT* (a non-document case), and that of *Weintraub,* forward to a single conclusion would force one to conclude that almost every error in classification may be demonstrated at trial to result from some underlying error in fact cognizable under § 1520. This would, of course, render protest requirements moribund, a result eschewed by the Federal Circuit. *See ITT Corp.,* 24 F.3d at 1387 n.4 ("[U]nder no circumstances may the provisions of § 1520(c)(1) be employed to excuse the failure to satisfy the requirements of § 1514."). Consequently, in order to protect the viability of protests under 19 U.S.C. § 1514 and whatever documentary requirements that exist in the statute and regulations, the court concludes that in the case of missing documentation required by statute or regulation, the importer must prove more than that it can produce documentation at the time of trial. At the very least, the importer must prove that, but for a mistake of fact or other inadvertence, proper documentation would have been filed *at the time required by law.* Simple failure of

[9] In *Aviall of Tex., Inc. v. United States,* 861 F. Supp. 100 (Ct. Int'l Trade 1994), *appeal docketed,* No. 95-1019 (Fed. Cir. Oct. 24, 1994), the court took pains to explain exactly what inadvertence had occurred and why proper documentation was available.

[10] "[Section] 1520(c)(1) requires the importer to establish the asserted inadvertence through documentary evidence submitted to the appropriate customs officer, unless the inadvertence is manifest from the record." *ITT Corp.,* 24 F.3d at 1387. The Federal Circuit found this burden was not met. *Id.* The court also held, however, that even though the error is not adequately demonstrated to Customs, it may be demonstrated at trial by introduction of evidence that explains that which was unsatisfactorily explained to Customs. *Id.* at 1389. Thus, the error may be made manifest at trial. The Federal Circuit kept intact the requirements that Customs must be notified of the mistake of fact or inadvertence within one year of liquidation. *See id.* at 1387.

[11] It has been held, however, that this provision is "not remedial for *every* conceivable form of mistake or inadvertence adverse to an importer, but rather * * * offers 'limited relief in the situations defined therein'". *Godchau-Henderson Sugar Co. v. United States,* 496 F. Supp. 1326, 1331 (Cust. Ct. 1980) (emphasis added) (quoting *Phillips Petroleum Co. v. United States,* 54 CCPA 7, 11, C.A.D. 893 (1966)).

the broker to file proper documentation does not satisfy § 1520(c)(1). *See AT&T Int'l,* 861 F. Supp. at 99.

Plaintiff does not allege it can meet the burden described here. It had ample opportunity to demonstrate proof of origin in a timely manner, and it does not claim that proper documentation existed at the time of entry and would have been filed but for an inadvertence. Plaintiff's attempts to jury rig the proper documentation do not suffice.[12] Under the facts of this case, to allow filing of proof of origin now, or even within one year of liquidation, would render a nullity the then-existing requirement that proof of origin be filed at entry or that a bond be posted and the proof be filed 60 days later. *See* 19 C.F.R. § 10.198(a)(1)–(2) (1991).

## CONCLUSION

In summary, the court concludes that Customs is not required to reliquidate Executone's entries of the subject merchandise. Customs' determination to liquidate the merchandise at an *ad valorem* duty rate resulted from a conclusion of law based upon documentary requirements. Furthermore, plaintiff has failed to allege any mistake of fact or inadvertence entitling it to a remedy under 19 U.S.C. § 1520(c)(1). Accordingly, plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted.

---

[12] Thus, the court need not reach the issue of whether the reasoning of *Occidental* and *Cavazos* would be approved by the Federal Circuit post-*ITT.*