Slip Op. 03 - 3

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - -x

THERMACOTE WELCO COMPANY,           :

                   Plaintiff, :

           v.                 : Court No. 93-08-00431

                            :

UNITED STATES,

                            :

                 Defendant.  :

- - - - - - - - - - - - - - - - - - -x


Opinion

[On cross-motions as to refund of duties
 voluntarily deposited, summary judgment
 for the defendant.]

Decided:  January 7, 2003

     Wigman, Cohen, Leitner & Myers, P.C. (Edward J. Farrell) for
the plaintiff.

     Robert D. McCallum, Jr., Assistant Attorney General; John J.
Mahon, Acting Attorney in Charge, International Trade Field Office,
Commercial Litigation Branch, Civil Division, U.S. Department of
Justice (James A. Curley); and Office of Assistant Chief Counsel,
International Trade Litigation, U.S. Customs Service (Chi S. Choy)
of counsel, for the defendant.

        AQUILINO, Judge:  In this action, the plaintiff importer

seeks relief from denial by the U.S. Customs Service of a request

for refund of duties voluntarily deposited to the extent those

deposits proved to be in excess of its liability therefor, as

determined by the International Trade Administration, U.S.

Department of Commerce ("ITA").

I

Following joinder of issue, the parties have interposed cross-motions for summary judgment. They have done so in the belief that their pleadings show that there is no genuine issue as to any material fact within the meaning of USCIT Rule 56(c) and that each is entitled to judgment as a matter of law. Plaintiff's Statement of Material Facts Not in Dispute, submitted pursuant to Rule 56(i) [since relettered *(h)*], avers, among other things, that:

> 1. The [twelve] entries in question consist of low-fuming brazing rod (LFB) from New Zealand.
>
> 2. At the time of each of these entries there was in place a suspension of liquidation of entries of LFB from New Zealand pursuant to outstanding antidumping and/or countervailing duty orders.
>
> 3. The U.S. Customs Service failed to collect the deposit of countervailing and/or antidumping duties required by the relevant suspension order on each of the entries in question.
>
> 4. At the request of . . . Customs . . . plaintiff voluntarily tendered deposits of countervailing and/or antidumping duties . . . with the understanding that the entries were not liquidated.
>
> 5. The entries were in fact mistakenly liquidated . . ..
>
> 6. The voluntarily tendered deposit amounts exceeded Plaintiff's antidumping/countervailing duty liability as finally determined by the U.S. Department of Commerce.
>
> 7. . . . Customs . . . refused to refund the excess of Plaintiff's deposits over its liabilities.

Defendant's response to this statement admits paragraph 1 and denies paragraph 6. That response also:

2.  Admits that the entries in issue were made and there were outstanding antidumping and/or countervailing duty orders directed to low-fuming brazing rod from New Zealand; denies that liquidation of the entries was suspended . . ..

3.  Admits that the Customs Service did not collect antidumping or countervailing duties on the entries in issue; avers that the plaintiff or its broker, D.J. Powers, indicated on the entry summaries (CF7501) that the entries were consumption entries not subject to anti-dumping or countervailing duties; avers further that the plaintiff or its broker did not deposit antidumping or countervailing duties on the entries in issue when the entry summaries were filed . . ..

4.  Admits that at the request of . . . Customs . . . the plaintiff voluntarily tendered antidumping or countervailing duties for Entry Nos. 85-164232-9 and 85-164230-3; denies there was any understanding between . . . Customs . . . and the plaintiff's broker that the entries had not been liquidated at the time the voluntary tenders were made . . ..

5.  Admits that the entries were liquidated on the dates stated in [plaintiff's] Exhibit A; denies that the entries were mistakenly liquidated.

* * *

7.  Admits that . . . Customs . . . refused to allow the refunds requested by the plaintiff; denies the remainder of the statement.

Defendant's own Statement of Material Facts Not in Dispute adds that:

2.  Neither antidumping nor countervailing duties were deposited when the entry summaries were filed[;] estimated regular duties were deposited[] for the entries in issue.

3.  An entry code of "01" appears in Box 2 on each entry summary (CF7501) for the entries in issue.

4. A bulletin notice of liquidation for each entry in issue appeared on or about the date of liquidation.

None of these averments is controverted by the plaintiff. Indeed, after reviewing the papers in this action, the court concludes that there is no issue of material fact which requires trial.  The dispositive issue(s) are matters of law that can be resolved by this opinion.  Cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact") (emphasis in original).

The thrust of defendant's cross-motion for summary judgment is that this action be dismissed for lack of subject-matter jurisdiction.  Sometime subsequent to entry and to liquidation, Customs requested that plaintiff's broker, D.J. Powers Company, Inc., tender voluntarily antidumping/countervailing duties at the deposit rates on at least some of the entries[1], whereupon

---

[1] The Customs Import Specialist in the port of entry declares:

Handwritten notes on the entry summaries for Entry Nos. 85-164232-9 and 85-164230-3 indicate that I requested voluntary tender for these two entries.  There were no such notes on the entry summaries for Entry Nos. 85-164231-6 and 86-122741-7.

Defendant's Cross-Motion for Summary Judgment, Declaration of Conchita L. Fielding, p. 2, para. 6.

monies were advanced for all twelve entries now at bar.  See Plaintiff's Brief, Exhibit B.

The plaintiff claims to have learned that those entries had been liquidated on the various dates listed on the schedule of entries[2] when they and many others were processed for refunds in conjunction with an administrative review conducted by the ITA pursuant to 19 U.S.C. §1675.  See Plaintiff's Brief, p. 2.  Its request for refunds of excess amounts tendered was denied by Customs on the ground that "no regulatory authority exist[ed] for processing the[m] for a refund."[3]  The plaintiff thereupon lodged a protest of this decision with Customs, which was denied.  This action ensued.

II

The Court of International Trade has exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.  28 U.S.C. §1581(a).  See also 28 U.S.C. §2631(a).  The plaintiff pursues this action under 19 U.S.C. §1520(c)(1) or, in the alternative, under section 1520(a)(2).  Those provisions of that act were as follows at the times of entry, liquidation and tender of additional duties herein:

---

[2] See Plaintiff's Brief, Exhibit A.

[3] Defendant's Cross-Motion for Summary Judgment, Letter of Customs Import Specialist Brenda H. Gibson.

**§ 1520.  Refunds and errors**

**(a) Cases in which refunds authorized**

The Secretary of the Treasury is authorized to refund duties or other receipts in the following cases:

\* \* \*

(2) Fees, charges, and exactions.-- Whenever it is determined in the manner required by law that any fees, charges, or exactions, other than duties and taxes, have been erroneously or excessively collected; . . ..

\* \* \*

**(c) Reliquidation of entry**

Notwithstanding a valid protest was not filed, the appropriate customs officer may, in accordance with regulations prescribed by the Secretary, reliquidate an entry to correct--

(1) a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the appropriate customs officer within one year after the date of liquidation or exaction; . . ..

While the court may have subject-matter jurisdiction over an action such as this pursuant to 28 U.S.C. §1581(a)[4], when, as here, the government contests that jurisdiction, the plaintiff must establish that the statutory requirements have been satisfied.[5]

---

[4] See, e.g., Everflora Miami, Inc. v. United States, 19 CIT 485, 885 F.Supp. 243 (1995), aff'd, 86 F.3d 1174 (Fed.Cir. 1996).

[5] Id.

A

The plaintiff takes the position that its section 1520-(c)(1) protest was timely. It argues that because liquidation occurred prior to the tender of the antidumping/countervailing-duty deposits, the liquidation is irrelevant. Instead, the date of exaction is controlling as a "statutory alternative to the date of liquidation". Plaintiff's Brief, p. 4. Furthermore, that moment of exaction in this matter was not the date of the voluntary tender(s), rather

> the date on which Customs informed Plaintiff that it would not refund the difference between the countervailing and antidumping deposits made by Plaintiff and the countervailing and antidumping liabilities finally found by the Department of Commerce.

Id. The plaintiff attempts to rely on New Zealand Lamb Co. v. United States, 40 F.3d 377 (Fed.Cir. 1994). In that case, estimated duties had been deposited with the Service for each of eight entries, as well as monies estimated to cover countervailing duties. Upon liquidation, the latter were found to be greater than those estimated. Customs marked the entries as liquidated for the higher duty amounts and posted the appropriate bulletin notices for each. The company tendered the additional countervailing duties but not interest that had accrued on them. After the 19 U.S.C. §1514-90-day period of limitation had run, the Service billed New Zealand Lamb for the interest, which was paid. Ninety days later, the company filed a protest with Customs, which denied it. The

Court of International Trade thereafter concluded that the Service's failure to charge the interest by the time of the liquidation meant that the entries liquidated without interest were final. New Zealand Lamb Co. v. United States, 16 CIT 1039 (1992). The court of appeals vacated that ruling, concluding that "there was no decision regarding interest-- so as to trigger the running of the ninety-day limitations period-- until Customs actually bill-ed New Zealand Lamb for interest on March 23, 1990". 40 F.3d at 381.

> . . . [T]hat interest on the underpayment of duties is a charge . . .. We do not see how there can be a decision on a charge --at least for purposes of starting the running of a limitations period-- until the party levying the charge announces that the charge is being levied and states the amount of the charge, or the method of computing the charge. In the case of interest that means there is no decision until the party being assessed either is informed of the amount of interest that is due or is told what the rate of interest to be applied against the principal amount is. Until this is done, the party assessed is not informed of all elements of the charge: liability and quantum, either or both of which it may wish to protest.

Id. at 382 (citations, footnote omitted).

The defendant responds at bar that "New Zealand Lamb is factually different from this case, and its *ratio decedendi* cannot be applied here." Defendant's Brief in Reply, p. 2 (italics in original). Stated another way, this court "lacks jurisdiction because the protest (or request to reliquidate) was untimely, and Thermacote's claim otherwise fails to satisfy the requirements of §1520[](c)(1)." Defendant's Brief, p. 3.

(1)

It is appropriate to note that the courts have concluded that the provisions of section 1520 are "not remedial for every conceivable form of mistake or inadvertence adverse to an importer, but rather . . . offer[] 'limited relief in the situations defined therein'". Godchaux-Henderson Sugar Co. v. United States, 85 Cust. Ct. 68, 74, C.D. 4874, 496 F.Supp. 1326, 1331 (1980)(emphasis in original), quoting Phillips Petroleum Co. v. United States, 54 CCPA 7, 11, C.A.D. 893 (1966). That is,

> [s]ection 1520(c)(1) does not afford a second bite at the apple to importers who fail to challenge Customs' decision within the 90-day period set forth in § 1514. . . . We emphasize that under no circumstances may the provisions of § 1520(c)(1) be employed to excuse the failure to satisfy the requirements of § 1514.

AT&T International v. United States, 18 CIT 721, 726, 861 F.Supp. 95, 100 (1994), quoting ITT Corp. v. United States, 24 F.3d 1384, 1387 n. 4 (Fed.Cir. 1994). The regulations promulgated in conjunction with that statute provided, in pertinent part:

> **Correction of clerical error, mistake of fact, or inadvertence.**
>
> (a) *Authority to review and correct*. Even though a valid protest was not filed, the district director, upon timely application, may correct pursuant to . . . 19 U.S.C. 1520(c)(1)[] a clerical error, mistake of fact, or other inadvertence meeting the requirements of paragraph (b) of this section, by reliquidation or other appropriate action.
>
> (b) *Transactions which may be corrected*. Correction pursuant to . . . 19 U.S.C. 1520(c)(1)[] may be made in an entry, liquidation, or other Customs transaction if the clerical error, mistake of fact, or other inadvertence:

(1) Does not amount to an error in the construction
of a law;

(2) Is adverse to the importer; and

(3) Is manifest from the record or established by
documentary evidence.

(c) *Limitation on time for application*.  A clerical
error, mistake of fact, or other inadvertence meeting the
requirements of paragraph (b) of this section shall be
brought to the attention of the district director at the
port of entry . . . within 1 year after the date of li-
quidation or execution.  . . .

19 C.F.R. §173.4 (1988).


Two different types of transactions require the court's

consideration herein, namely, the entering of plaintiff's mer-

chandise without the payment of antidumping/countervailing duties

or marking on the Customs Forms 7501 of the liability therefor; and

then later the tendering of monies therefor in excess of that

liability.  While the first type is manifest from the record and

did not develop from an error in the construction of a law within

the meaning of the above-quoted statute and regulations, clearly,

it was not adverse to the importer and therefore eligible for

correction under 19 U.S.C. §1520(c)(1), supra.  Indeed, the plain-

tiff presses its subsequent, generous tender(s), which satisfy all

three substantive standards for correction.


(2)

Hence, the plaintiff had to bring that predicament of its

own making to the attention of Customs within one year after the

date of liquidation.  Here, there is no dispute that the entries were liquidated on the dates listed in plaintiff's exhibit A[6], and there also can be no dispute on the record developed as to whether the Service was duly notified of the problem within a year of any of those dates.  Clearly, Customs was not.  Moreover, according to the parties' Rule 56 statements quoted above, "plaintiff voluntarily tendered" the funds now in controversy.  Given their concurrence, it is indeed difficult to discern any actionable exaction within the meaning of 19 U.S.C. §1520, as discussed in part B of this opinion, infra.

---

[6] According to 19 C.F.R. §159.9(c)(1) (1988), generally the bulletin notice of liquidation

> shall be dated with the date it is posted or lodged in the customhouse for the information of importers. The entries for which the bulletin notice of liquidation has been prepared shall be stamped "Liquidated," with the date of liquidation, which shall be the same as the date of the bulletin notice of liquidation.  This stamping shall be deemed the legal evidence of liquidation.

See Goldhofer Fahrzeugwerk GmbH & Co. v. United States, 13 CIT 54, 706 F.Supp. 892, aff'd, 885 F.2d 858 (Fed.Cir. 1989); LG Electronics U.S.A., Inc. v. United States, 21 CIT 1421, 1426, 991 F.Supp. 668, 674 (1997).

The importer bears the burdens of examining all notices posted to determine whether its goods have been liquidated and of lodging any protest thereof in a timely manner.  See, e.g., Omni U.S.A., Inc. v. United States, 11 CIT 480, 483, 663 F.Supp. 1130, 1133 (1987), aff'd, 840 F.2d 912 (Fed.Cir.), cert. denied, 488 U.S. 817 (1988).  This burden is bolstered by the presumption that "public officials perform their duties in a manner consistent with law".  Commonwealth Oil Refining Co. v. United States, 60 CCPA 162, 167, C.A.D. 1105, 480 F.2d 1352, 1356 (1973).  See also INS v. Miranda, 459 U.S. 14, 18 (1982).

Assuming nonetheless in this section of the opinion that "the request of . . . Customs" was the equivalent of an exaction[7], plaintiff's pursuit of relief still appears to have commenced beyond the statutory period of limitation.  In fact, as indicated above, the plaintiff purports to consider the start of that time to have been the date of the Service's refusal to make any refund of the excess monies rather than the date of the request for the tender of additional duties.  But it offers no precedent in support of this thesis, nor has this court uncovered any.  While both New Zealand Lamb, supra, and the subsequent case Castelazo & Associates v. United States, 126 F.3d 1460 (Fed.Cir. 1997), involved importer payment of interest upon delayed duties, which the court of appeals held to be a separate, protestable act when and if Customs

> (i) informs the importer that interest is due and (ii) sets forth either the amount of interest that is due or the method of calculating that amount in terms of the rate[8],

---

[7] The defendant attempts to undermine any such assumption for a number of reasons, to wit:

> . . . Customs' letter was not a charge or exaction because it did not assess a specific sum of money relating to the entries in issue. Halperin Shipping Co. v. United States, 14 CIT 438, 442, 742 F.Supp. 1163, 1167 (1990). Moreover, because Thermacote's payment of the duties in issue was voluntary . . ., it was not an exaction. Furthermore, a refusal by Customs to refund duties has been held not to be a charge or exaction. Carlingswitch v. United States, 68 CCPA 49, C.A.D. 1264, 651 F. 2d 768 (1981).

Defendant's Brief, pp. 4-5 (footnote omitted).

[8] New Zealand Lamb Co. v. United States, 40 F.3d 377, 382 (Fed.Cir. 1994); Castelazo & Associates v. United States, 126 F.3d 1460, 1463 (Fed.Cir. 1997).

that degree of Service circumspection is not found in its simple, even apologetic, denial of refunds due to lack of any regulatory authority.[9] Ergo, to be effective, any administrative protest had to have been lodged by the plaintiff much sooner in order to establish now this court's subject-matter jurisdiction hereof.

B

Since enactment of The Customs Courts Act of 1970, Pub.L.No. 91-271, 84 Stat. 274 (1970), the only method of challenging an allegedly invalid or illegal liquidation is through a timely administrative protest and subsequent court action, if necessary. E.g., United States v. A.N. Deringer, Inc., 66 CCPA 50, C.A.D. 1220, 593 F.2d 1015 (1979); LG Electronics U.S.A., Inc. v. United States, 21 CIT 1421, 1426, 991 F.Supp. 668, 674 (1997)("whether legal or illegal, a liquidation not protested [under 19 U.S.C. §1514] within 90 days becomes final as to all parties"). The same approach to finality applies to 19 U.S.C. §1520. E.g., Omni U.S.A., Inc. v. United States, 840 F.2d 912 (Fed.Cir.), cert. denied, 488 U.S. 817 (1988).

Furthermore, while it is clear that an excess of duties has been collected from the plaintiff, section 1520(a)(2), supra, on its face applies to fees, charges and exactions "other than duties", and the courts have declined to hold the refusal to refund a voluntary tender of the latter to be a charge or exaction within

---

[9] See note 3, supra.

the meaning of the Tariff Act.  E.g., <u>Tikal Distributing Corp. v. United States</u>, 21 CIT 715, 718, 970 F.Supp. 1056, 1060 (1997); <u>Carlingswitch, Inc. v. United States</u>, 85 Cust.Ct. 63, 66, C.D. 4873, 500 F.Supp. 223, 227 (1980), <u>aff'd</u>, 68 CCPA 49, C.A.D. 1264, 651 F.2d 768 (1981).  <u>Cf</u>. <u>Brother Int'l Corp. v. United States</u>, 27 CIT ___, ___, Slip Op. 03-1, p. 7 (2003) ("[t]he question generally turns on whether the payment is truly voluntary").

### III

In view of the foregoing, plaintiff's motion for summary judgment cannot be granted.  Defendant's cross-motion therefore must be, with summary judgment in its favor entered accordingly.

Decided:  New York, New York
          January 7, 2003

 

 

_____
                                Judge